Campbell, &c., v. Campbell's trustee, &c.

CASE 81—EQUITY—MAY 28, 1881.

# Campbell, &c., v. Campbell's trustee, &c.

### APPEAL FROM MADISON CIRCUIT COURT.

1. The husband did not pay any part of the purchase price for the land,. but the whole of it was paid by the wife with the proceeds of her land and distributable share in her father's estate, the husband agreeing that the title should be made directly to her.
2. Failing to have the title made to her, his conveyance afterwards to Campbell, and the conveyance of the latter to the wife, will be upheld in equity against the husband's creditors.
3. The contract between the husband and wife was post-nuptial, in which the husband became the trustee for his wife for a meritorious. consideration.

R. M. & W. O. BRADLEY FOR APPELLANTS.

The lands of the wife having been sold under an agreement with her husband that its proceeds should be invested in a larger and more valuable tract, and the deed be made to her, and the money having been so invested, and the husband having, without her knowledge or consent, taken a deed to himself, a trust thereby resulted to her;. and the husband having thereafter invested her with the title, in order to carry out the former agreement, the same should be upheld against the husband's creditors. (Sec. 19, p. 587, General Statutes; Mallory v. Mallory's adm'r, 5 Bush, 464; Miller and wife v. Edwards, &c., 7 Bush, 396; Pribble v. Hall, 13 Bush, 61; Latimer v. Glenn, &c., 2 Bush, 544; Story's Eq., vol. 2, sec. 1377a.)

C. F. & A. R. BURNAM FOR APPELLEES.

1. The attempted voluntary conveyance by Samuel L. Campbell through his brother to his wife is void as to the debts created before the execution of the deeds. (Hurdt v. Courtney, 4 Metcalfe, 143; 5 J. J. Mar., 551; 3 Dana, 513.)
2. Not having been recorded in the proper clerk's office in the time required, the deed cannot be used against L. D. Campbell's creditors without proof of its execution. (2 Litt., 237; 4 Ib., 272; 4 Paige, 65; Ib., 74; 6 Ib., 366; 8 Ib., 161; Whitesides v. Dorris, 7 Dana, 101; 8 B. Mon., 529; Latimer v. Glenn, 2 Bush, 543; 4 Bush, 37; 3 Md., 1; 1 Met., 34.)

CHENAULT & BENNETT FOR DENNY, LANCASTER NATIONAL BANK,. AND JNO. M. CAMPBELL.

1. The money which paid for the land was, according to law, the property of Samuel L. Campbell by virtue of his marriage with appellant.

2. The deeds from the husband to his brother, and from him to appellant, were voluntary, fraudulent, and void.

3. The deed from Campbell to Bronston, trustee, for his creditors, was recorded eighteen days before the deed from S. L. Campbell to his brother was recorded.

.JUDGE HARGIS DELIVERED THE OPINION OF THE COURT.

At the time the appellants, Josephine Campbell and S. L. Campbell, intermarried, the latter was possessed of considerable estate, and was thought to be solvent by the community in which he resided, and his wife was the owner, by gift from her father, of a tract of land worth about $4,000.

She agreed with her husband to sell her land, and invest the proceeds in another tract larger and more valuable than hers, lying in the same county, and contiguous to his lands upon which they resided, on the condition that the deed should be made to her.

In pursuance of that agreement, she united with him in the sale of her land, and the proceeds thereof were paid for the other tract, containing 131 acres, to the vendor, Denny, who, although he knew the source whence he was being paid, made the deed to her husband without her knowledge or consent.

The price agreed to be paid for the tract purchased from Denny was $7,800, the remainder of which was paid out of her distributable share of her deceased father's estate before any part thereof came to the hands of herself or her husband.

Denny being the administrator of her father, retained of her distributable share enough to pay the residue of the purchase price, and they executed to him their joint receipt therefor, which was charged to her in his fiducial settlement.

Some six months after the deed was made by Denny to her husband, she discovered the condition of the title, and

complained of the wrong that had been done to her; and about two months thereafter her husband conveyed the 131 acres, in consideration of one dollar, to Alexander Campbell, who, upon the same day, executed a deed therefor to the appellant Josephine.

All of said deeds were either recorded or lodged for record before the institution of this action by her husband's trustee to ascertain assets and pay debts to the extent of his property, which he had assigned for the benefit of his creditors.

It appears that the husband did not pay any part of the $7,800, but the whole of that sum was paid by the wife with the proceeds of her land and distributable share. It therefore follows that her equity is superior to the equity of his creditors, and unless some inexorable legal rule can be interposed to defeat her claim to the 131 acres of land, justice demands that it should not be taken from her for their benefit.

She neither consented nor acquiesced in making the title to her husband, and her conduct is without fraud, and free from any just suspicion of dishonesty.

And this court has held, in the case of Miller and wife v. Edwards, &c., 7 Bush, 397, the facts of which are analogous to this case, that "such a contract as that made with her husband before her land was sold is valid and enforceable as between the parties to it, as a prudent mode of preserving her estate against his improvidence or capricious power."

This principle of law seemed to be so well established that the court said in that case, it "now requires no citation of authorities in its support."

The case of Wickes v. Clarke, 8 Paige, 161, cited by appellees' counsel, does not sustain their petition, but, on the contrary, it is in accord with the doctrine above quoted.

The vice chancellor said in that case, intentional fraud must appear to render void a voluntary settlement, even as to creditors whose debts existed when the deed was made. He very properly distinguished this class of cases from the ordinary case of a husband making a settlement of *his own* property upon his family under similar circumstances, and then went on to say, "with respect to both real and personal property which comes to the wife by gift or inheritance, and in which the husband gains an estate or interest in law by virtue of the marriage, the *wife's equity*, as it is called, entitles her to a settlement which this court will invariably enforce in favor of the wife, and even the children of the marriage, against the husband and all claiming under him, such as assignees or creditors, especially whenever they are obliged to seek the aid of the court to reach the property." (Clancy, 440.)

The chancellor concurred in the conclusions of the vice chancellor, except so far as he upheld the conveyance of the husband's interest as tenant by the curtesy initiate.

Such an interest being his absolute property, independent of his wife, and subject to his debts by the laws of New York, could not be voluntarily parted with to the prejudice of antecedent creditors.

But no such rule can prevail in Kentucky, because section 2, article 2, chapter 52, General Statutes, provides: "The husband's contingent right of curtesy shall not be sold for, or otherwise subjected to, the payment of any separate debt or responsibility of his during her life." The husband's conveyance of such a right did not therefore prejudice his

creditors, who could not subject it to their debts in any event.

Nor does this case fall within that class of cases founded on parol antenuptial contracts which are in contravention of the statute of frauds. This is a post-nuptial contract, not prohibited by that statute, whereby the husband became the trustee of the wife for a commensurate and highly meritorious consideration, and the execution of the deed by him to Alex. Campbell, and by the latter to the appellant, Josephine, was, in effect, what a court of equity would have compelled him to do before he could have reduced her property to his possession by its aid. (Story's Eq., vol. 2, sec. 1377a.)

And his creditors, who have been "obliged to seek the aid of the court to reach the property," stand in no better attitude than he; and as this court said in the case of Latimer, &c., v. Glenn, &c., 2 Bush, 545, "she having the legal title, with an equity untainted with illegality or fraud, cannot be disturbed." (Aynesworth, &c.; v. Haldeman, &c., 2 Duvall, 566, and authorities therein cited.)

The order of lodging the deeds for record, whether before or after the deed of assignment, does not affect the rights of the appellant Josephine, for the reason found in Miller and wife v. Edwards, where it is said of a state of facts nearly identical with those of this case, "even without any explicit stipulation, an available trust resulted by implication, unaffected by the statute of frauds or of *conveyances*."

And although a purchaser from the husband, while the legal title was in him, without notice of the trust and the wife's resulting equity, might hold the land against her, still a creditor who has not been misled or defrauded by any voluntary act of hers, and who fails to assert his claim

before the completion of her legal title, cannot be preferred over her pure equity.

It is not necessary to review the other authorities cited, as they embrace quite a different state of facts from those disclosed by this record.

The judgment is therefore reversed, and cause remanded, with directions to dismiss the petition so far as it seeks to set aside the deed from Alex. Campbell to Josephine Campbell and her children, and for further proper proceedings.