CASE 10—PETITION EQUITY—DECEMBER 20.

# Meade, &c., v. Stairs, &c.

### APPEAL FROM CARROLL CIRCUIT COURT.

1. HUSBAND AND WIFE—INVESTMENT BY HUSBAND OF WIFE'S MONEY—RIGHTS OF HUSBAND'S CREDITORS—Although the husband may have obtained possession of the wife's money under a verbal agreement to invest it in a home for her, yet if the wife afterwards acquiesces in his conversion of it to his own use and recognizes as his the property in which it has been invested, her claim to the proceeds of such property can not prevail against the rights of the husband's creditors.

2. PROCEEDS OF WIFE'S LAND—While the statute provides that the proceeds of the wife's land shall be hers, unless otherwise provided in the conveyance or obligation of the purchaser, yet if she permits her husband to convert and use the proceeds as his own, she can not thereafter assert a claim therefor against his estate to the prejudice of his creditors.

A. DUVALL AND J. A. DONALDSON FOR APPELLANTS.

When the wife's property is sold upon an agreement with her husband that the proceeds shall be invested in other property for her, and she permits him to use the proceeds in the purchase of other property. the title to which is made to the husband and subsequently sold by him, she can not assert claim to the proceeds of this property as against the creditors of the husband who became such subsequent. to the sale of her property. (Maraman v. Maraman, 4 Met., 84; Pryor v. Smith, 4 Bush, 379; Nuckolls v. Scarce, MS. Op., Sept. 23,. 1880.)

MASTERSON & GAUNT AND JOHN W. RODMAN FOR APPELLEES.

1. The wife had an equity in the proceeds of this property that could not be subject to the payment of her husband's debts, until a provision was made for her or a settlement made upon her. (Hays v. Blanks,. 7 B. M., 348; Elliott v. Warring, 5 Mon., 338; Bowling v. Winslow, 5 B. M., 29; Atley v. Knott, 6 B. M., 24; Allen v. Russell, 78 Ky., 105; Hathaway v. Yeaman, 8 Bush, 391.)

2. When, in violation of an agreement between the husband and wife, the husband takes the title to land purchased with her money to himself, he holds it in trust for her, and the wife is equitably entitled to the property or its proceeds. (Farris v. Dunn, 7 Bush, 276; Miller v. Edwards, 7 Bush, 396; Lay v. Brown, 13 B. M., 296; Campbell v.. Campbell, 79 Ky., 395; Latimer v. Glenn, 2 Bush, 538.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

January 11, 1883, G. S. Stairs sold and conveyed to George T. Thompson, a mill property to which he had the title and undisputed right.

He was then involved in debt. Thompson executed to him two one thousand dollar notes, payable in one and two years respectively, for that much of the purchase money. January 12, 1883, he assigned them to his wife, the appellee, N. M. Stairs, and immediately left the country and never returned. Soon after doing so, his creditors, the appellants, sued out attachments against the fund owing by Thompson. The wife, upon her petition, was made a party, and claimed the notes under the assignment to her upon the following state of case.

Her father conveyed to her, in 1871, a tract of land situated in Bracken county, in this State, and then worth ten thousand dollars, for the recited consideration of three thousand dollars, reserving a lien upon it for the payment of the last-named sum, and thus giving her, as was then estimated, seven thousand dollars in land. She and her husband sold a part of the land in 1877, and the remainder in 1879, there being a verbal agreement between them that he would reinvest the proceeds, less the sum necessary to discharge the lien upon the land, in a home for her. In this way he received, as net proceeds, something over four thousand dollars. It was paid to him with her knowledge and consent. They removed from the land in 1877, to the town of Carrollton, in this State, and there lived in rented property, the husband engaging in buying and selling tobacco until 1879. In this business he

used, at least, a portion of the proceeds of the sale of her land.   How much the record does not disclose.

This he did with her knowledge.   In 1879 he quit trading in tobacco and purchased a mill site, which he improved by the erection of a mill containing valuable machinery, and which property is the same purchased by Thompson.

It is not shown, unless inferentially, that any portion of the proceeds of the wife's land was invested in this property.   It is true there is some testimony tending to show that when they moved to Carrollton the husband did not have any large amount of means derived through himself; but how much he made while engaged in the tobacco business does not appear.   He seems to have made something.   The title to the mill property was taken to him.   This was in 1879.   The wife knew of it soon after, and then complained to him of the non-investment of the proceeds of her land in a home. He thereupon purchased one at the price of two thousand two hundred dollars, had the title made to the wife, and appears to have represented to her that the most of the purchase money had been paid, although, in fact, but seven hundred and fifty dollars had been paid.   She acquiesced in the title to the mill property remaining in her husband, and took no steps to have any equity or right of her own established in it, even admitting that a portion of the proceeds of her land had been invested in it; and thus the matter rested from 1879 until 1883.   In the *interim* her husband sold an interest in the property, and then re-purchased it. He also mortgaged it, and the wife united in the mortgage.   She now claims that her husband held the pro--

ceeds of her land in trust for her under the agreement between them, above recited; that by way of its execution, in part at least, he transferred to her the two Thompson notes, amounting to two thousand dollars; and, as he had never invested for her of the four thousand dollars and over, received by him, but the seven hundred and fifty dollars paid on her home, that she is entitled to hold the notes.

The creditors of her husband, whose debts were created in 1881-2 and 3, in response assert, first, that the transfer of the notes to her was without consideration and fraudulent; second, if this be not so, that then she was but a creditor of the husband, and the transfer was a forbidden preference of her by the debtor, and operated as an assignment of his estate for the benefit of all his creditors. The notes were adjudged to Mrs. Stairs, and the creditors have appealed.

Our duty, however unpleasant, is to look at the question, divested of all sympathy for her and her children. There has, evidently, been no fraud upon her part, and whatever loss results to her comes from that trusting confidence which, while it ennobles the true wife, yet, when misplaced, brings misfortune. Satisfied of her honesty and truthfulness, we have, in the main, based the above statement of the case upon her own testimony. But admitting that she is in no respect mistaken, yet the agreement, if it may be called such, between her and her husband as to the re-investment of the proceeds of her land, was of a very general character. It fixed no time or place or particular property for the re-investment. No property was purchased for two years thereafter, and it does not satis-

factorily appear that any of the money arising from the sale of her land was then used in paying for or improving it.

The circumstances above recited distinguish this case from Latimer v. Glenn, 2 Bush, 535; Miller and Wife v. Edwards, 7 Bush, 394, and Campbell, &c., v. Campbell's Trustee, &c., 79 Ky. Rep., 395. Here there was no loan to the husband of the money arising from the sale of her land, but she allowed him to receive it upon a promise of re-investment for her; he converted it to his own use, and she sanctioned the conversion. It is uncertain how he used it; but if any of it was invested in the mill property, yet the title was taken to him; and, although she learned of it soon thereafter, she not only acquiesced in it for several years, during which the debts of the appellants were created, but joined in a mortgage of it as his property.

By the common law, contracts between the husband and wife were void *in toto*. They were considered as one person. The rule is otherwise in equity. For many purposes it treats them as distinct persons, and contracts between them will, under some circumstances, be enforced, even against his creditors. To do so in a case like the one now presented would, however, be extending the rule to an unwarrantable and dangerous extent. Not only did one deed divest the wife of title and another vest the title to the property thereafter purchased in the husband, with acquiescence on her part after it came to her knowledge, but it is utterly uncertain whether any of the proceeds of her land were invested in the property so purchased.

This is a much stronger case against any equity upon the part of the wife than existed in that of Pryor, Assignee, &c., v. Smith, &c., 4 Bush, 379. There a tract of land was in part paid for with the land of the wife. She refused to part with it unless its value was secured to her in the tract purchased, and to this the husband consented. The title was taken to him, however, and subsequently, in a contest with his creditors, she was denied relief, this court saying: "These transactions constituted a complete conversion and reduction of her estate in the land by her husband to his possession; and generally, where this is done, a court of equity will not interpose to provide for the wife to the exclusion of the claims of creditors."

In the subsequent case of Darnaby v. Darnaby's Assignee, 14 Bush, 485, and where the circumstances were calculated to appeal still more strongly in behalf of the wife, the same rule was announced; and, in our opinion, to hold otherwise would not only be unjust to the rights of innocent creditors, but would open a door to fraud and perjury. It would, moreover, give the husband a delusive credit, and enable him to deceive those dealing with him upon the strength of appearances, which, in this instance, were known to the wife and acquiesced in by her. Indeed, she was not only silent as to any claim or interest in the mill upon her part, but she said to the world, by uniting in the mortgage of it, as belonging to her husband, that she had no right or equity in it. She first permitted her husband to obtain the proceeds of her land under a promise of re-invest-

ment. Subsequently she acquiesced in his converting
the same to his own use, and not only is its identity
gone, but it does not appear what use he made of
it. This conduct made it his own. The mill prop-
erty was indisputably his, and the notes were also.
Under such circumstances their transfer to the wife
was unsupported by any equity which can prevail
against the rights of his creditors.

It is true section 3, article 2, chapter 52, of the Gen-
eral Statutes, provides that the husband and wife may
sell and convey her land, but in such case "the pro-
ceeds shall be *hers*, unless otherwise provided in the
conveyance or the obligation of the purchaser."
This statute, adopted in 1873, changed the law there-
tofore existing, and which provided that in such a case
"the proceeds shall be *his*, unless otherwise expressly
provided in the conveyance or the obligation of the
purchaser." (2 Revised Statutes, chapter 47, article 2,
section 2.) But this change should not be construed
to make the wife the creditor of the husband, to the
prejudice of creditors in a case like this one, where
she has not only permitted the husband to reduce her
estate to his possession, although under a promise of
re-investment for her, but has subsequently allowed him
to convert the proceeds to his own use and benefit,
thus making them, by her consent and in law, his own.
Such conduct upon her part, however innocent, would
operate as a fraud upon innocent parties, if she could
still assert a claim to the prejudice of their rights. In
such a case, if either is to suffer, she must bear the
loss. She could have secured herself at the proper
time and in the proper way ; and can not be allowed,

when in fault herself, to say that third parties, who have been misled by, not only her silence when she should have spoken, but by her positive acts in recognizing the property as her husband's, shall suffer instead of herself. The present statute declares that the proceeds of a sale of her land shall be hers in the absence of the deed or obligation of the purchaser providing otherwise, thus affording her an opportunity to have the same settled upon her or to hold it. This was the object of the change in the law. If, however, she does not avail herself of this right, but permits her husband to convert and use it as his own, then she can not, thereafter, assert a claim therefor against his estate to the prejudice of his creditors.

The appellants are entitled to be first paid their debts out of the proceeds of the Thompson notes. Whatever may remain, Mrs. Stairs will be entitled to, and the judgment is reversed for further proceedings in conformity to this opinion.