## United States National Bank, et al., Trustee v. Moore, etc.

(Decided June 2, 1925.)

### Appeal from Daviess Circuit Court.

1. Appeal and Error—Appellate Court Required to Accept Defendant's Testimony as True where he had Verdict in Trial Court.— Where defendant had verdict in trial court, appellate court was

required to accept his testimony as true, where it was supported by other testimony.

2. Fraudulent Conveyances—Creditors Relying on Husband's Apparent Ownership of Wife's Property have Superior Equity to the Wife.—It is a general rule recognized by courts of equity that, where wife allows her husband to hold her property in his name as his own, and to incur obligations on faith that property belongs to him, his creditors, who rely on such apparent ownership, have a superior equity to his wife in the property, and she cannot take such property free from creditors' lien even though it was originally hers.

3. Fraudulent Conveyances—Property Appearing in Name of Husband, Though Belonging to Wife, Held Subject to Lien of His Creditors.—Where husband obtained credit on faith of his ownership in real property, though in fact it belonged to his wife, and it was in his name only by her indulgence, such property was subject to lien of his creditors, though it was subsequently sold, and identical proceeds reinvested in property, title to which was taken in name of the wife.

FLOYD J. LASWELL and W. FOSTER HAYES for appellants.

LOUIS I. IGLEHART for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

The creditors of appellee, James Kincheloe Moore, instituted this action in the Daviess circuit court to subject certain real property held in the name of his wife, Penelope E. Moore, but alleged to belong to him, to his debts and liabilities, and the lower court having ruled against them, they prosecute this appeal, insisting that an examination of the evidence will disclose that the husband is the true owner of at least a one-half undivided interest in and to two tracts of land deeded to and held by the wife; that this property was purchased with the proceeds of other property jointly owned and held by Moore and wife for a number of years, and then conveyed to one Vanover; that although their attention was sharply directed to the fact that the deed to the original property was made to both Moore and wife there was no effort on their part or on the part of either of them through all the years which they owned and held it, to pass the entire title to the wife; that this title was reaffirmed about two years before the commencement of this litigation by the reconveyance to the husband and wife jointly of the entire property; that the wife fully recognized and acquiesced in the joint ownership of the lands with her husband and

recognized his right and interest and that the husband was in the active control and management of the farm and of all its operations; that the debt attempted to be enforced was created while appellant, James Kincheloe Moore, was the apparent owner by deed of a one-half undivided interest in and to the lands which were later sold and the proceeds invested in lands now attempted to be subjected, the credit having been extended to him with the wife's knowledge and acquiescence upon the faith that the husband owned a one-half undivided interest in the farm forever closes the wife's mouth against the assertion of her right to the whole property as against creditors who extended the husband credit on the faith of his ownership to a one-half undivided interest in the property, for all of which reasons the appellants say that the chancellor erred in holding the lands in controversy subject, to the extent of the husband's ownership, to the debts sued on.

The appellees, Mr. and Mrs. Moore, were married in the early '70's, and have since lived together as husband and wife, rearing a family. About 1896 he became involved in financial difficulties and his property was swept away, as he claims. His wife had very little, if any, property at that time. However, she inherited a small piece of real property from her father, valued at the time at $50.00. She also purchased from her brothers and sisters four other interests of like value, the whole property being valued at the time at $250.00. This was about 1896 or 1897. She had no means with which to pay for the property she purchased from her sisters and brothers, so far as the record, shows. From this small beginning, in 1896, Mr. and Mrs. Moore accumulated sufficient by 1910 to purchase a one-half undivided interest in a farm worth several thousand dollars. It was deeded to Penelope Moore, James Kincheloe Moore and their son, by name, by one L. N. Robertson. On this farm they made their home until November, 1919, when they sold it to one Vanover for something more than $14,000. In the meantime the farm had been divided between the son and the father and mother, he taking 63 and a fraction acres of the 128 acres, and the father and mother taking 65 and a fraction acres. It was sold to Vanover at the price of $110.00 per acre, thus giving to the appellees more than $7,000.00. There was, however, a mortgage lien upon the property, for a few hundred dollars, a

portion of which was apportioned to the parents, the balance paid by the son, after the sale of the property to Vanover. Shortly after this sale to Vanover, appellee, Mrs. Moore, purchased the two tracts of land now in controversy, one containing 23 acres and the other 38 acres, paying $4,700.00 for the first tract and $1,500.00 for the second tract, all but $300.00 of the money and notes received from Vanover for the sale of the original tract. These two tracts were deeded to Penelope Moore alone. The notes from Vanover for the unpaid purchase price on the original tract were made to Penelope E. Moore, and the cash payment was made to her.

On October 18, 1919 appellee, James K. Moore, purchased stock in a certain industrial corporation then being organized in Owensboro, and agreed to pay therefor $5,000.00 six months thereafter, giving his negotiable promissory note of that date therefor. This note was met and before due was sold for valuable consideration to appellant, United States National Bank. At that time there was a deed of record in the office of the clerk of the Daviess county court showing appellees, James K. Moore and Penelope E. Moore, to be the joint owners of 65 acres of land in that county. This land is the same which was later sold to Vanover, appellees realizing something more than $7,000.00. About a month leater and on November 17th, 1919, appellees, James Kincheloe Moore and Wife, Penelope E. Moore, sold and conveyed the Robertson land to Vanover, as before stated, while the $5,000.00 note was owing by appellee, J. K. Moore, had been executed and delivered at that time it was not due although held by the bank. Some time about the first of the year 1920, when appellee James K. Moore learned that the stock in the corporation which he had purchased with the note was of little or no value, he repudiated the transaction and declined to pay the note, and soon thereafter filed his voluntary petition in bankruptcy, listing as his sole and only liability the $5,000.00 held by appellant bank.

The trustee in bankruptcy appointed to wind up his affairs asked and was granted permission by the federal court to join the appellant bank in the institution and prosecution of this case for the subjection of the real property described herein to the debts and liabilities of the appellee, James K. Moore, hence this joint action.

Appellee bank and trustee filed as evidence in the case several deeds, one from Robertson to the Moores in

1910 naming both appellees, James K. Moore and Penelope E. Moore as grantees, a copy of the deed from the appellees to Vanover, and also copies of the deeds to appellee, Mrs. Moore, for the two tracts now in contest. The appellee took depositions of several witnesses; the husband, James K. Moore, testified but the wife did not. He gave a rather full history of their financial affairs from their marriage up to the institution of the suit, explaining that he owned and claimed no property since his financial failure in 1896, but that his wife had accumulated since that time the property which she now claims. He emphatically denied any effort on his part or on the part of his wife to hinder, delay or cheat his creditors by the conveyances of their lands to Vanover and the purchase of the two tracts which formed the subject of this controversy. He is sustained in much of his testimony by his neighbors and acquaintances who testified in his behalf. We must, therefore, accept as true his evidence with respect to the true ownership of the property as between himself and wife and also his denial of all fraud and bad faith in the land transaction with respect to his creditors. The remaining question is, may a debtor who has obtained credit on the faith of his ownership of valuable real property, although he does not in fact own it, it being in his name only by the indulgence of another, make a disposition of that property by sale or by surrendering it to its true owner, and thus render it free from liability for the debts and obligations which he contracted while the property stood in his name?

It is a general rule recognized by courts of equity everywhere that where the wife allows her husband to hold her property in his name as his own and to incur obligations on the faith that the property belongs to him, his creditors who rely on such apparent ownership in the husband has superior equity to his wife in the property and she can not take the property free from the creditors' lien even though it was originally hers. 27 C. J. 645; Pryor v. Smith, 4 Bush 379; Hall v. Hall, 12 S. W. 945, 11 Ky. Law Rep. 716; Carter v. Strange, 14 S. W. 837, 12 Ky. Law Rep. 642; Clay v. Trimble, 16 S. W. 83, 13 Ky. L. Rep. 61; Long v. Deposit Bank, 90 S. W. 961; Hamilton v. Preston, 166 Ky. 61. We so held in the very recent case of Larimore v. Perkinson, et al., 208 Ky. 382.

Inasmuch as this rule does not rest upon the actual fraud between the husband and wife it may be enforced

by showing that it would be inequitable to the creditors to allow the wife who has permitted her husband to hold himself out as the owner of the property and to thus obtain credit, to assert her rights to the disadvantage of the creditors when the husband is in failing circumstances and thus "gobble up" his assets. The case of Meade v. Stairs, 88 Ky. 66, is to this effect, it being said, in substance, that although the husband may have obtained possession of the wife's money under a verbal agreement to invest it in a home for her, yet if the wife afterwards acquiesced in his conversion of it to his own use and recognizes as his the property in which it has been invested, her claim to the proceeds of such property cannot prevail against the rights of the husband's creditors.

In Morris v. Preston Bros., 9 Ky. Op. (not reported), page 907, a similar question was presented, the wife claiming she had allowed her husband to use her money which was later invested in real property, and the court said:

"Having used these funds with the sanction of his wife as his own, and on the faith of them obtained credit for five years by purchasing and selling land and personal property in his name, which sales were ratified by his wife by joining him in the real estate conveyances of land so bought in his own name, we feel constrained to hold that the deed to the wife, Mrs. E. A. Morris, was as to the appellees fraudulent and void. To hold otherwise would be to sanction a gross fraud. The wife, by sanctioning the use of her funds by her husband as his own for five years, was by her silence enabling her husband to commit a fraud if the story of her husband be true, and we therefore prefer the conclusion to which the conduct of both of the appellants lead, that she had sold her land in Tennessee and given her husband the money to use at his discretion but to be reinvested for her before her husband's death."

A debtor may not voluntarily convey and dispose of his real property without raising the presumption of fraud on his part as to such debts, and this presumption as to prior debts does not depend upon his intention or the circumstances of the party conveying or the amount conveyed. His good intentions are no defense. The law will not permit the debtor in explanation of his conduct

in voluntarily conveying his property, to show that he acted in good faith, for it is no defense. Hamilton v. Preston, 166 Ky. 61.

The question here is not whether the appellees intended to commit a fraud upon the creditors of the husband so much as it is a question of his right to convey property which was apparently his, whether so or not, to the disadvantage of his creditors.

In the case of Long v. Deposit Bank, 90 S. W. (Ky.) 961, it was said that inasmuch as the husband was held out by the wife as the owner of the land, and while thus being held out incurred debts on the faith of such ownership, which was the basis of the litigation, he had no right to the prejudice of his creditors to convey the property to the wife in satisfaction of her existing debts; and the creditors were permitted to subject the property so conveyed by the husband to the wife, although it was actually paid for with the wife's money. Talbott v. Gillespie, 53 S. W. 1047, 21 R. 1065. This rule has been applied in most of the states.

So accepting as true the testimony of appellee, James Kincheloe Moore, with respect to the purchase of the Robertson property, including his statement that it belonged to his wife, appellee, Penelope E. Moore, yet under the well established rule to which we have referred and which has been adjudged and enforced by courts of equity throughout this county (27 C. J. 645; Long v. Deposit Bank, 90 S. W. 961, 28 Ky. L. R. 913; Torrey v. Dickinson, 213 Ill. 36, 72 N. E. 703; Atkinson v. Aiken, 163 N. W. 1024; Minnich v. Shaffer, 135 Ind. 634), the property which he owned as well as that which appears to be his by reason of being held in his name and with the acquiescence of his wife, at the time he obtained credit, was subject to the lien of creditors. The fact that the Robertson lands were sold and the identical proceeds reinvested in the tracts now sought to be subjected does not change the situation in the slightest. According to the uncontradicted evidence the money and note obtained from Vanover for the Robertson tracts were invested by appellee, Mrs. Moore, in the two small tracts which she now holds. As the husband, so far as the record discloses, at the time of the incurring of the indebtedness by the executor of the $5,000.00 note, was the owner of the undivided one-half interest in that property, his undivided interest would have been subjected, had they

continued to hold it, to the indebtedness which he incurred while it was in his name. His share of the proceeds from the Robertson tracts was, according to the evidence, invested in the tracts now sought to be subjected. The situation is, therefore, the same as if Moore had continued to own the Robertson tract.

The established rules of law applicable to facts like we have before us lead to but one conclusion and that we have stated above. There seems to be no escape from it. The judgment is reversed with directions to proceed in accordance with this opinion.

Judgment reversed.