TIERNAN vs. GIBNEY and others.

*Specific performance.*

1. Specific performance will not be enforced where the evidence leaves any of the essential terms of the contract doubtful.
2. Thus, where there was a parol agreement for the sale and conveyance of land (with circumstances which perhaps took it out of the statute of frauds), but it is doubtful whether plaintiff was to have possession immediately upon payment, or not until a certain time thereafter, and he refused, in fact, to make payment unless the possession were immediately surrendered, specific performance will not be enforced.

APPEAL from the Circuit Court for *Waukesha* County.

Action for the specific performance of an oral agreement to sell and convey land, etc. The complaint avers, in substance, that, on the 20th of September, 1867, the land in question belonged to the defendant *Gibney*, having been sold and conveyed to him by one Hacket, who held a mortgage on it for $1,200 purchase money; that *Gibney* offered to sell and convey the land to plaintiff for $2,200, of which there was to be paid to Hacket enough to discharge his mortgage; that $27 of the purchase money was to be paid down, and thereupon *plaintiff might go into immediate possession* of said lands and appurtenances, "excepting the buildings and yards connected therewith;" that plaintiff paid *Gibney* the $27, and received from him a written receipt for the same, which states that the money is "in part payment of his land, purchased by said *Tiernan*, and acknowledged hereby;" that the time for completing said contract by payment of the residue of the purchase money, and by the execution and delivery of a deed, was extended so as to give a reasonable time for plaintiff to examine the records in reference to *Gibney's* title, and for *Gibney* to execute the deed; that plaintiff entered upon the possession of part of the land, *Gibney* sur-

rendering the same to him, and had eleven acres of it plowed; that, before the 16th of October following, plaintiff had made the necessary examinations as to *Gibney's* title, and was satisfied that his representations in regard thereto were correct, as *Gibney* well knew; that before the first of said month of October it was agreed between plaintiff and Hacket and *Gibney*, that, on payment of the principal, and the interest then due on the Hacket mortgage, out of the balance of said purchase money to be paid by plaintiff, Hacket would discharge the mortgage of record, although the principal would not be due until 1871, "which said agreement," it is alleged, "said Hacket and the plaintiff from thence hitherto have been and still are willing to keep and perform;" that on the 16th of October aforesaid, plaintiff offered to pay *Gibney* the whole of the unpaid purchase money, pursuant to said agreement, and that he has ever since been, and still is, ready and willing to pay the same, and fulfill his part of said agreement, on receiving a good title to the same, free of incumbrance; that *Gibney* refused to make such conveyance to him, and to surrender the whole of the premises, including said buildings and yards, until some indefinite time in the next ensuing spring (which was contrary to the terms of said agreement), and has not since said refusal offered plaintiff to comply with the terms of said agreement, or to refund said sum of $27, or pay plaintiff for the expense and trouble to which he had been put in his attempt to carry out said agreement (to wit, the sum of $250); but on the contrary, said *Gibney*, on the 30th of said month of October, conveyed said land to the defendants *John* and *William Bull*, and surrendered to them "the possession of the whole of said lands and appurtenances, including said buildings and yards." The complaint further charges said defendants *John* and *William Bull* with knowledge of the agreement between plaintiff and *Gibney*, and of other facts above

stated, before they took their conveyance, and with intent to wrong the plaintiff, etc. Prayer, that on payment or deposit of the unpaid balance of the purchase money, as the court might direct, the defendant *Gibney* might be adjudged to specifically perform the aforesaid agreement; that said defendants *John* and *William Bull* might be required to convey said premises either to *Gibney* or to plaintiff, etc., etc.

The answer alleges, that, by the oral agreement between plaintiff and *Gibney*, the latter was to remain in possession of the premises until the spring of 1868, except that plaintiff should have the liberty to occupy a portion of them, for the purpose of plowing the same, during the fall of 1867; that plaintiff refused to carry out said oral agreement, or to pay the purchase money (except said $27), unless *Gibney* would give him immediate possession, and thereupon abandoned the agreement and demanded a repayment of said $27. The answer further sets up the statute of frauds, and also avers that the sale to *John* and *William Bull* was made in good faith and for a valuable consideration, and that they were informed at the time that plaintiff had abandoned and forfeited his oral agreement with *Gibney*.

The circuit court held, that the contract for the sale and conveyance of the premises by *Gibney* to plaintiff was void by the statute of frauds; that there was no such part performance as took it out of the statute; that the contract as claimed by the plaintiff was not clearly established by the evidence; and that the complaint must therefore be dismissed. Judgment accordingly; from which plaintiff appealed.

*E. Fox Cook* (with *E. G. Ryan*, of counsel), for appellant.

*Jenkins & Elliott*, for respondent.

PAINE, J. Even if it should be conceded that there was enough in the evidence to take the contract out of

the statute of frauds, still the plaintiff fails to establish a case for a specific performance. It is well settled that, where the proof leaves any of the essential terms of the contract doubtful, courts will not enforce a specific performance ; and such is the case here.

The whole controversy arose upon the question whether *Gibney* was to remain in possession of the farm until the next spring. The plaintiff claims that possession was to be given on payment. The defendants deny it, and claim that *Gibney* was to remain in possession until spring. The court below finds that the evidence leaves this fact in doubt. If so, that is a good ground for refusing specific performance, for certainly that was a material and essential provision of the contract. If the evidence is considered, it clearly does not sustain any more favorable conclusion on this point for the plaintiff's case than that arrived at by the court below. *Gibney* and his son both swear that he was to retain possession till spring. The plaintiff swears to the contrary. Here are two witnesses against one. And there are some circumstances disclosed by the evidence, which, I think, tend to confirm *Gibney's* statement. *Gibney* never denied the parol agreement to convey the land. On the contrary, according to his understanding of it, he was prompt, active and apparently anxious to comply with it. The plaintiff was dilatory, and, after several interviews, finally refused to pay until possession was delivered. The plaintiff's conduct subsequent to this was just what might be expected if he had made up his mind that he might compel *Gibney* to relinquish that provision of the contract by which he was to remain on the farm till spring. He did not deny to *Gibney* that such was the agreement. He did not express any surprise at *Gibney's* claiming that right, nor accuse him of violating the contract in so doing But he told him there was "no disappointment on his part," and that, as soon as *Gibney* would "clear out,"

the money was ready for him.   The conduct of *Gibney*, on the other hand, was precisely what was to have been expected, if the agreement was in fact as he claimed it to have been, that he was to remain on the farm till spring.   The plaintiff himself states, that, when he insisted on immediate possession, *Gibney* "grumbled considerably and went away."   Elizabeth Mahon, also, the plaintiff's witness, uses the same language.   She also tried to induce *Gibney* to give up the land, not by telling him that such was the agreement, but she said : "Clear out of the land ; and, just as soon as you give up the land, your money is ready."   He did not seem to accept her advice, but went around to the front door, and saw the plaintiff.   The latter repeated the same terms, and then she says : "*Gibney* grumbled a good deal at that, and went away very much dissatisfied."   She did not recollect what he said when he grumbled ; but *Gibney* supplies her want of recollection in this particular, and swears that he told the plaintiff that such was not the agreement.   That he did tell the plaintiff so, is not denied by either the plaintiff or Elizabeth Mahon, who was present.   And neither of them pretends that the plaintiff at any time denied to *Gibney* that the contract was as he claimed it.

The conduct of both parties seems, therefore, only explainable upon the theory that both were aware that the contract was as *Gibney* claimed it, and that the plaintiff was trying to take advantage of *Gibney's* evident anxiety to get the money at once, to compel him to relinquish that stipulation.   At all events, their conduct on both sides seems more consistent with this theory than with any other.

There is, therefore, the testimony of two witnesses against one, and the testimony of the two materially corroborated by the subsequent conduct of both parties. And I do not attach any importance to the circumstance that the deed which *Gibney* prepared for delivery con-

tained the usual clause granting all his estate in "possession," etc. These parties had bargained for the entire farm by parol, and the fact that the deed subsequently prepared for the vendor to deliver contained the usual granting clause, without any mention of the right to retain possession till the next spring, has no tendency to show that such a stipulation was not contained in their parol agreement. If they would trust the entire bargain to parol, certainly the vendor would not have been likely to alter the ordinary form of deed in order that he might have written evidence of this particular provision. No conclusion more favorable to the plaintiff than that arrived at by the court below can therefore be drawn from the evidence. The plaintiff has certainly failed to remove all doubt on this question, and there is probably a preponderance of evidence in favor of the conclusion that the agreement was as stated by *Gibney*. If so, there ought to be no specific performance ; because *Gibney* was willing and anxious to comply, and the plaintiff was slow, and finally refused to comply without imposing new terms.

The case was decided by the court below not only on the ground that the plaintiff had failed to establish clearly the contract as he claimed it, but also upon the ground that it was within the statute of frauds. But, as the first seems to be sufficient, it is unnecessary to examine the other.

*By the Court.*—The judgment is affirmed.