ESTATE OF SHINOE: BOLLEN, Appellant, vs. SHINOE, Respondent.

*September 11—October 10, 1933.*

482

For the appellant there was a brief by *Kopp & Brunckhorst* of Platteville, and oral argument by *L. A. Brunckhorst*.

*Harry E. Carthew* of Lancaster, for the respondent.

FOWLER, J. The appellant's contentions are that: (1) The alleged agreement was not proved; (2) The claimant's possession was not such as to entitle him to the remedy of specific performance; (3) The remedy of specific performance is barred by the statute of limitation and laches; (4) The remedy of specific performance should be denied because of inequitable conduct of the claimant; (5) The trial court erred in not awarding a larger amount due the estate upon the counterclaim.

(1) The only evidence tending to support the county judge's finding that the contract was made may be summarized as follows: Mr. Croft, a neighbor of the claimant, testified that the decedent stated to him on two occasions that the claimant owned one-half the farm; and that the decedent said he would like to sell his part "and get it straightened up." Another witness testified that the decedent said to him that the claimant had a half interest in the farm. Mrs. Bollen, a sister of the claimant and decedent's only other heir, testified that in 1898 the father bought a tract of land referred to as the Longbotham tract, which constituted the larger part of his farm, and borrowed the money to pay for it, and that it was then agreed between the claimant, her husband, and the father that both the claimant and her husband should stay with the father on the

farm and help pay off the debt and each should have a one-third interest in the tract purchased. The claimant testified to this also, but his testimony was objected to on the ground that he was incompetent to testify to a transaction with his deceased father. The receipt of his testimony if it was erroneous was rendered harmless by reason of the sister's subsequent testimony. The son at the time of the tri-party agreement was living upon the farm with his father and mother and he continued to live with them thereafter. Bollen, the son-in-law, abandoned this agreement, and the son testified that when he did so he, the claimant, was going to leave the farm and told his mother so. She wanted him to stay. After this conversation with his mother he talked with his father and came to an agreement with him and that as a result of the agreement he remained on the farm until the father's death. The claimant also testified when called adversely to prove the counterclaim that he and his father were to share the profits made in conducting the farm and in buying cattle and feeding them thereon. The deceased left the management of the farm entirely to the claimant. Out of the profits of the farm some permanent improvements were made upon it. Until the mother's death the proceeds of sales from the farm were turned over to the mother. After her death the son received them. Prior to the purchase of the Longbotham tract the son had remained and worked on the farm ever since he became of age, some seven or eight years, and then had some personal property which remained on and was used in conducting the farm. The son has never married. After the mother's death in 1917, the father and son continued to live and work together upon the farm until some five years before the father's death in 1928, when the father to secure better care went to live with the daughter. When the Longbotham tract was bought the title was taken by the father and the purchase price borrowed upon security of a mortgage placed upon the

whole farm. This mortgage was paid off from the profits of the farm. The last payment was made in 1904.

If an adverse examination of the claimant taken before filing the counterclaim, and another taken thereafter before the trial, were considered as in evidence, the agreement of the father to convey might be considered as proven, although it would perhaps be indefinite as to whether it covered anything more than the Longbotham tract. We find these adverse examinations in the bill of exceptions. The only part of the record bearing upon their receipt in evidence is as follows: At the close of the claimant's case upon the trial his counsel, after offering specifically several documents referred to on the trial, said: "I want to offer in evidence the petition of Cora Bollen (the sister), also all of the records and files and papers in this court in the matter of the Estate of Lewis Shinoe, deceased." Opposing counsel then asked: "Does this include the claim against the estate?" Claimant's counsel answered that it did and that he wished to offer specifically the claim of Wm. Shinoe (claimant) and the objection to it made and filed. Opposing counsel: "We object to that as incompetent, irrelevant, and immaterial." Claimant's counsel then said: "You mean to object to the claim?" And opposing counsel answered: "The whole thing." The court made no ruling.

We are of opinion that in this state of the record the adverse examinations cannot be considered as in evidence. No specific mention was made of the adverse examinations. They were clearly not receivable when offered as the claimant was incompetent under sec. 325.16, Stats., to testify to any transaction or communication by him personally with the decedent and at that time there had been no "opening of the door" by contestant. Upon the trial counsel opposing the claim had objected on the ground stated to every question put to the claimant involving a transaction with the deceased and the court had sustained the objections. Had a

specific offer of the examinations been made he would certainly have objected to them on this ground.

Moreover, the adverse examinations of the claimant could not be put in evidence by the claimant himself. The statute, under the rule *inclusio unius, exclusio alterius,* prohibits it. Sec. 326.12 (5), Stats.; *Lange v. Heckel,* 171 Wis. 59, 175 N. W. 788; *Lamberson v. Lamberson,* 175 Wis. 398, 411, 184 N. W. 708. The reason the party taking the deposition may put it in evidence is because it is an admission against interest. The party whose deposition is taken cannot use it, because as to him it is only a self-serving declaration, under oath it is true, but he is usually present to testify, and such is the instant case, and, being present, there is no need to use his deposition. The depositions were never offered at all by counsel for the contestant, so they are not properly in evidence at all. Adverse examinations are not part of the record of the trial until they are offered. *Lamberson v. Lamberson, supra.* Manifestly counsel for the contestant did not have the depositions in mind when claimant's counsel made his omnibus offer. It does not appear whether claimant's counsel had them in mind or not. If he did he should in fairness have mentioned them specifically. If he did not he cannot with good grace claim they are in evidence. In either case we cannot consider them as in evidence. The learned county judge does not state whether he considered them or not in arriving at his conclusion, although it is not apparent how he could have found the agreement was made without considering them, especially as he stated during the trial, when all the evidence bearing in any way upon the making of the alleged agreement was in, that: "This is the most jumbled-up pieces of testimony I think I have ever listened to. . . . No person like myself can take up this testimony that has already been presented and give a proper decision."

It is elementary that to warrant a decree of specific performance the evidence must be clear, satisfactory, and convincing. *Estate of Powell,* 206 Wis. 513, 516, 240 N. W. 122, and cases cited. We consider the evidence herein manifestly insufficient to support a finding that the decedent made the agreement claimed.

This however does not exclude the claimant from the relief of specific performance under the original tri-party agreement proved by the claimant by the testimony of Mrs. Bollen. That agreement was proved and persists until it is replaced by a subsequent agreement or is abandoned. The claimant is not permitted under the statute to prove the subsequent agreement which he claims to have been made. The proof shows that he has fully performed the original agreement. We are of opinion that he should be awarded judgment under the undisputed evidence for specific performance of the original agreement for a one-third interest in the Longbotham tract, unless the appellant's contention under (2), (3), or (4) is sustained.

(2) In support of his contention that the claimant's occupancy of the farm with his father was not such taking possession under an oral contract to convey as is necessary to support specific performance, the appellant relies on *Marshall & Ilsley Bank v. Schuerbrock,* 195 Wis. 203, 217 N. W. 416, and *Rodman v. Rodman,* 112 Wis. 378, 88 N. W. 218. Other decisions of this court bearing upon the point are *Bowen v. Warner,* 1 Pin. 600; *Blanchard v. McDougal,* 6 Wis. 167; *Knoll v. Harvey,* 19 Wis. 99; *Tiernan v. Gibney,* 24 Wis. 190; *Horn v. Ludington,* 32 Wis. 73. It is stated in the *Schuerbrock Case, supra* (p. 213) : "It is clear from the authorities that possession must be open, exclusive, notorious, and referable solely to the contract;" and that in the *Rodman Case, supra,* it was held that (p. 378) : "When the promisor under a void oral

contract to convey the premises was in possession, the possession of the promisee was subordinate to that of the holder of the legal title." Many other cases might be cited to the general proposition. See 58 Corp. Jur. "Specific Performance," § 203 *et seq.*

Were the contract relied upon for the conveyance of the father's whole interest in the premises there would be much force in appellant's contention. However, where the contract is for the conveyance of an undivided interest in the premises, the promisee who is in possession jointly with the promisor is in possession in the only way that the circumstances permit, and this should, it would seem, be sufficient. The following cases support this view: *Taylor v. Taylor,* 79 Kan. 161, 99 Pac. 814, 815; *McKay v. Calderwood,* 37 Wash. 194, 79 Pac. 629; *Bushnell v. Rowland,* 118 Mich. 618, 77 N. W. 271; *Stratton v. Stratton,* 58 N. H. 473; *Lloyd v. Hollenback,* 98 Mich. 203, 57 N. W. 110; *Twiss v. George,* 33 Mich. 253; *Warren v. Warren,* 105 Ill. 569. *Johns v. Johns,* 67 Ind. 441, is to the contrary and perhaps other cases may be, but we are of opinion that the possession of the claimant was such as to make the remedy of specific performance available to him, in view of his performance of the alleged contract.

(3) Sec. 330.18 (4), Stats., fixes a ten-year period of limitation for actions which on or before February 28, 1857, were cognizable by a court of chancery, when no other limitation is fixed. No other limitation is fixed for actions of specific performance, and such actions were cognizable by a court of equity on and before the date specified by the statute.

While the general rule may be stated to be that long lapse of time unexplained bars the remedy of specific performance, and a multitude of cases are cited to the point (58 Corp. Jur. p. 1122, note 1), an equal number are cited to the proposition that "one who is in possession of property may, without being guilty of laches, delay indefinitely his suit

for specific performance to compel conveyance of the property to him." 58 Corp. Jur. p. 1123, note 11. It is stated in this connection that in the absence of special circumstances making specific performance impossible or inequitable, his possession is regarded as a continuous assertion of his claim, and he need not sue until after repudiation of his rights in the property or until his possession is disturbed. 58 Corp. Jur. p. 1124, citing *Rodgers v. Beckel,* 172 Mich. 544, 138 N. W. 202; *Hargis v. Edrington,* 113 Ark. 433, 168 S. W. 1095; *Hogan v. Thrasher,* 72 Mont. 318, 233 Pac. 607; *Wright v. Brooks,* 47 Mont. 99, 130 Pac. 968; *Derby v. Derby,* 248 Mass. 310, 142 N. E. 786; *Stonehouse v. Stonehouse,* 156 Mich. 43, 120 N. W. 23; *Coffee v. Emigh,* 15 Colo. 184, 25 Pac. 83; *Hall v. Peoria & E. R. Co.* 143 Ill. 163, 32 N. E. 598. It has been inferentially assumed, by holding that actions were brought within the statutory period of limitation, that where there is a statute of limitations covering actions for specific performance, the action must be commenced within the statutory period. *Lowell v. Kier,* 50 Cal. 646; *Parrott v. Atlantic & N. C. R. Co.* 165 N. C. 295, 81 S. E. 348; *Gamble v. Martin,* 60 Tex. Civ. App. 517, 129 S. W. 386; *Cubit v. Jackson* (Tex. Civ. App.) 194 S. W. 594. When the statute begins to run, however, depends upon the circumstances. If a contract were in writing and definitely fixed the time for conveyance and the party seeking specific performance were out of possession, the statute would doubtless commence to run at the time specified in the contract. If, however, the contract is an oral one and the promisee in possession is invoking the remedy and has fully performed his part of the contract, the running of the statute may well be held not to commence at the date of the contract or even at the date of performance by the promisee.

In *Cutsinger v. Ballard,* 115 Ind. 95, 17 N. E. 206, *Wright v. Brooks, supra,* and *Hemming v. Zimmerschitte,* 4 Tex. 159, it is held that after the promisee has fully

performed his part of the contract the promisor holds the title in trust for the trustee, and that as the statute of limitations does not apply as between trustee and *cestui que trust,* lapse of time however long does not bar the action unless the trustee has repudiated his obligation. It has also been held, without mention of trust relation, that a promisee in possession has no occasion to bring action until the promisor repudiates his promise and that until then neither laches nor limitation operates as a bar (*Hanson v. Brown,* 139 Ark. 60, 213 S. W. 12; *Nickerson v. Nickerson,* 209 Mich. 135, 176 N. W. 456; *Stonehouse v. Stonehouse, supra*); and that close family relationship excuses the bringing of the action until after the death of the promisor where there was no repudiation by the promisor during his lifetime. The respondent cites *Estate of Powell, supra,* and *Dingman v. Hilberry,* 159 Wis. 170, 149 N. W. 761, in support of his contention that neither laches nor the statute of limitations bars his action. In the former, the oral contract involved might be performed by either will or conveyance, and manifestly might be performed at any time during the promisor's life. In the latter, conveyance was to be made when a substantial amount had been paid by the promisee, which put the promisor's time of performance long in the future, as the payments made were little more than interest on the purchase price. In *Williamson v. Neeves,* 94 Wis. 656, 69 N. W. 806, it is stated that where a contract to convey is silent as to when the conveyance is to be made, it is implied that it is to be made within a reasonable time after performance by the promisee. In *Williams v. Williams,* 50 Wis. 311, 6 N. W. 814, it was held, without mention of the statute of limitations, that delaying action for nine years after the time fixed for performance under the circumstances involved barred the plaintiff from specific performance.

We have perhaps devoted more space than necessary to consideration of the appellant's claim that the claimant's

action is barred by limitation or laches. We are of opinion that the action is not barred. If we take the rule to be that conveyance must be made within a reasonable time after performance by the promisee where no time for performance is fixed, as stated in *Williamson v. Neeves, supra,* we have a contract that required not only that the son should help pay for the land, but that he should stay on the farm. This implies that the son should continue to stay on the farm. His staying on the farm was a part of the consideration which moved his father to make the contract if he did make it. Had the claimant left the place after the Longbotham tract was paid for, it would have been a violation of his contract and prevented him from requiring performance on his father's part. In nearly all contracts of the kind between father and son, one purpose of the parent, if not the only and main one, is to keep the son with him and provide for his services and his own care and comfort during life, and the contract cannot be considered as fully performed by the son until the death of the parent.

(4) Appellant's contention that the claimant should be denied equitable relief for his misconduct is based upon the fact that he was slow in acknowledging his indebtedness to the estate under the contestant's counterclaim, and attempted to conceal the facts of his indebtedness from the administrator. While claimant might well and doubtless should have gone to the administrator promptly after his appointment, and disclosed the state of his account as fully as possible, it does not appear that he ever denied liability or withheld from the administrator any specific information requested. We consider that the county judge did not err in refusing to reject the claim because the claimant did not in his complaint "offer to do equity" or did not "come into equity with clean hands."

(5) The basis of the counterclaim is an agreement, admitted by the claimant, that he and his father were to share the profits made in the conduct of the farm. The claimant

by his account filed admitted that under this agreement he owed the estate $1,364.64. The court struck from the account certain credits included in the account, which increased the amount by $634. Additional income during certain years was also added to the charges against the claimant in the account. As the claimant is not appealing from the judgment we need not consider whether these additional charges made by the court against the claimant are proper or not, although it would seem that they are.

The appellant claims that the court should have added $400 to the charges against the claimant by reason of the admission of the claimant that $800 of the proceeds of the farm in which his father had a half interest were invested in a $2,950 mortgage running to claimant alone given by Bollen, the daughter's husband. This claim is fallacious. The account charges the claimant with the amounts received and credits him with the amounts paid out in the conduct of the joint enterprise and such sums as were paid to the father. One-half the difference between the amounts received and the amount paid is the total sum which the claimant owes the estate, regardless of what he did with it, and the $400 is necessarily included in it. If the court saw fit to adjudge a half ownership in the $800 of the mortgage to be assigned to the estate it could doubtless have done so, although the counterclaim as filed presents no such issue, but in that event the amount adjudged owing by the claimant would have been reduced $400.

The appellant also claims that the evidence shows that the income from the joint enterprise was more than the account as allowed shows. This claim is based upon the fact that income tax reports made out by the claimant as for a partnership between him and his father for certain years show a greater income than is shown by the account. Such items of increase as the court allowed were based upon these reports. Just why part of the larger income shown by these reports was allowed and the rest disallowed does not

appear. It would seem that the claimant's recollections of income were more accurate and reliable when the tax statements were made than when he stated his account several years thereafter, and that anything in the account inconsistent with the tax statements should be satisfactorily explained or the tax statements should govern in one year if they do in another.

The appellant also claims that the income tax statements made as partnership statements by charging as income interest received by the partnership, $85.50 in 1917, and $87.50 in 1918, show that the mortgage or all but $100 of it was purchased with partnership funds, and that this accords with testimony offered by appellant that claimant admitted to the Bollens that only $100 of his own money went into the Bollen mortgage. The mortgage was $2,950 with interest at three per cent., and $85.50 is exactly three per cent. on $2,850. The testimony of the Bollens was not admitted. This evidence should have been received. If the father owned an interest in the Bollen mortgage he was entitled to a proportionate amount of the interest received upon it by the claimant, and this interest should have been included in the account. The amount of the father's proportionate share in the mortgage was material, and the claimant having claimed that $2,550 of his own money went into the mortgage, it was proper for the contestant to inquire, on cross-examination, as he attempted to do but was prevented by the court, where he got the $2,550, and thus to show, if he could, that part of it, or all of it, came from the proceeds of the joint enterprise.

This covers the main contentions of appellant based upon the judgment on the counterclaim. We will mention another matter, however, that seems to us to bear on the question whether there should be a new trial on that phase of the case. The judgment was entered July 19, 1932. The appeal is specifically from the judgment entered upon that date. After the record was filed in this court it was

returned to permit a correction of that judgment, and a so-called corrected judgment dated May 22, 1933, was returned with and is now in the record. From the recitals in it, it appears that counsel stipulated for the return of the record, for a hearing upon proposed corrections and for corrections to be made by the county court upon such hearing without prejudice to the appeal to this court. A hearing was had but the evidence received upon it is not in the record before us. Whether the corrected judgment is before us for correction or not, there is a manifest error in it. The error was made through inadvertence or confusion. If such error occurred in correcting the judgment, quite likely like error occurred in casting the account which forms the basis of the original judgment. This throws grave doubt whether that judgment—or the corrected judgment— should be given the benefit of the presumption of correctness that is ordinarily indulged in support of the judgments of trial courts. The corrected judgment is for $367 more than the original judgment. It purports to correct the judgment "by striking out the credit to said claimant of the sum of $175"—which by itself would increase the judgment by that amount—and "by changing the amount of interest for which the said claimant is chargeable on the Bollen note from the sum of $180 to the sum of $72"—which by itself would decrease the judgment by the difference between these sums, or $108. The combined effect of the two corrections, properly given, would be to increase the judgment by the difference between $175 and $108 or $67, instead of $367. Counsel for claimant also claims gross errors in the account as cast by the court, although he "submits that the judgment should be affirmed." The claimant admitted that $800 of the partnership money went into the Bollen mortgage. On this basis 800-2950 of the interest received by claimant on this mortgage belonged to the partnership and its receipt

should be accounted for. The account charges $72 interest as so received. The mortgage is now reduced to $900. There is nothing in the record to show when the payments of principal were made or the amount of interest received by the claimant on this mortgage.

On the whole record we are satisfied that the judgment of the county court does not correctly fix the amount due upon the counterclaim and that there should be a new trial of the issue thereunder, and that the judgment should be modified to award specific performance of the tri-party agreement, unless the brother and sister, who are the only persons interested in the estate, shall settle their differences, which the trial court, as the record discloses, with commendable effort, apparently succeeded in getting them to do at one stage of the trial, although the settlement agreed upon by them was not carried out owing to the objection of counsel.

*By the Court.*—The judgment of the county court is reversed, with directions for further proceedings in accordance with the opinion.