MARY MURPHY v. EMMA STEVER AND ALDERMAN B. PAINE.

*Specific performance—Evidence of terms of contract— Wife's possession of land bought from her husband—Betterments—Costs.*

When specific performance is sought of a contract for the conveyance of lands, and it appears that the terms of the agreement were embodied in formal papers which are in proof though not delivered, there will be less hesitation in giving relief than if the terms were all oral, and to be made out on the recollection of witnesses.

Where a wife bargains for the purchase of the undivided half of lands of which the husband is owner of the undivided half, and in the

occupancy, and from the time of the bargain occupies and claims the land with him, she may be deemed in possession under the contract.

When the husband under such circumstances goes on and makes valuable improvements on the land, relying on the wife's purchase, the wife, in a suit by her for specific performance should have the benefit of these improvements as she would have had if they had been paid for in part by herself.

Costs in cases of specific performance are in the discretion of the court.

Appeal from Saginaw. Submitted January 10. Decided January 25.

SPECIFIC PERFORMANCE. Complainant appeals. Reversed.

*Tarsney, Tennant & Weadock* for complainant.

*Hanchett & Stark* and *Wheeler & McKnight* for defendants. The possession necessary to sustain a decree for specific performance must have been taken in pursuance of the contract: *Munsell v. Loree* 21 Mich. 497; *Weed v. Terry* 2 Doug. (Mich.) 351; *Jones v. Tyler* 6 Mich. 369; *McMurtrie v. Bennette* Har. Ch. 126; *Neal v. Neal* 69 Ind. 419: 10 Rep. 166; Fry Spec. Perf. §§ 384, 387.

COOLEY, J. The facts in this case appear to be substantially as follows:

On May 13, 1879, James Murphy, the husband of complainant, was owner of the undivided half of two parcels of land in Saginaw county, embracing together about 168 acres, and was in the occupancy thereof. The defendant Stever was owner of the other undivided half thereof. On the day named complainant through the agency of her husband made an agreement for the purchase of Mrs. Stever's interest. The agreement, as complainant's witnesses testify to it, was that she should pay Mrs. Stever $1600, of which $100 should be paid down; $400 September 1, 1879; $400 September 1, 1880; $400 September 1, 1881; and $300 September 1, 1882; the deferred payments to be expressed in notes and to bear interest, and the last three to be secured by mortgage on the lands. As testified to by defendant's witnesses

it was that the payment of $400 should be paid September 1, 1879, as a condition precedent to any sale at all, but in other respects it is conceded that the bargain was as above stated. In pursuance of it, or, as defendant claims, in order that it might be readily carried into effect if the condition precedent was performed, Mrs. Stever executed a deed of her interest in the land and complainant paid $100, and executed notes and a mortgage for the deferred payments, and these were deposited with the deed in the hands of John J. Wheeler, Esq., to be delivered when the payment of September 1, 1879, was made.

That payment, however, was not made according to agreement. For this, complainant assigns the excuse that her husband, whom she had requested to attend to it, was absent in the lumber woods and had forgotten it. Mr. Wheeler, soon after the note fell due, called the attention of James Murphy to it by letter addressed to him through the postoffice, but this elicited no response. On January 17, 1880, before James Murphy had returned from the woods, Mrs. Stever sold and conveyed the undivided half to the defendant Paine who knew all the facts. In April following complainant filed her bill against Stever and Paine for specific performance of the agreement made with her.

It is objected on behalf of the defense that the contract, until the papers were delivered, was merely a verbal agreement for the sale of lands, and as such void under the statute of frauds. *Powell v. Conant* 33 Mich. 396. It is also said that the payment of $100 was no such part performance as can take the case out of the statute, and was no part performance at all if the view of the facts presented by the witnesses for the defense is accepted. This is no doubt true; and we must look elsewhere for equities to sustain complainant's case.

Such equities are supposed to be found in the facts that complainant occupied with her husband as co-tenant with him after the bargain was made, and that together they made considerable improvements, relying upon her purchase. The testimony on this point is given by the husband,

who says that he cleared off eighty acres after his wife purchased from Mrs. Stever. For the defense it is urged that the contract between Mrs. Stever and the complainant did not give to the latter any right to take possession; that she might have been treated as a trespasser; *Druse v. Wheeler* 22 Mich. 439, 442; s. c. 26 Mich. 189, 192; that she cannot, therefore, be deemed to have acquired any equities by the possession, or by the clearing even if she had made it, but certainly cannot under the circumstances inasmuch as it appears that the clearing was not made by her, but by her husband.

It is to be observed in view of the facts of this case that the objections to the specific enforcement of a parol contract are much weaker where all the principal stipulations are expressed in writing under the hands of the parties, so that no mistake can be made in respect to them, than when the terms are only expressed orally, and are only established on the recollection of witnesses. In this case nothing was left in dispute but the question whether the first payment of four hundred dollars was or was not a condition precedent. The sum to be paid, the times of payment, the conveyance to be given and the securities to be taken are all agreed upon, and all expressed in formal instruments.

It is further to be observed that the case was one in which no formal transmission of possession from Mrs. Stever to complainant could take place. James Murphy was already in possession; complainant was his wife and lived with him. All that could be done in the nature of a change of possession would be accomplished by James Murphy recognizing his wife as owner of one undivided half of the land when she claimed to have purchased it. This he may be said to have done by acting as her agent in the purchase, and claiming the Stever interest for her afterwards.

In respect to the improvements, it is conceded that complainant shows none made with her own money. But this case is peculiar, and constitutes to some extent an exception to the general rule. The improvements were made in reliance upon the purchase and by the husband of the purchaser.

The legal effect is, if the sale is completed, that he donates to his wife one half the cost of his expenditures. Why should not the wife have the benefit of these to the same extent as though they had been made with her own money? Is not her equity equally apparent? Is there any reason why Mrs. Stever should be permitted to inquire into this fact, and be allowed to appropriate the improvements on a circumstance so foreign to her own equities?

On the whole we are inclined to the opinion that Murphy might well understand and did understand that a sale was made May 13, 1879, and that the condition connected with the payment to be made the following September was only a condition precedent to the exchange of the papers. We think also that complainant is to be regarded as in possession by the implied assent at least of Mrs. Stever, and that this lays the foundation for an equitable consideration of her case. And finally that she should have the same benefit of the improvements made by her husband that she would have been entitled to had she made one-half of them herself.

The question of costs then arises. No tender was made before suit was brought, and the delay on the part of complainant when the small sum to be paid is regarded, was considerable, and is very imperfectly excused. In enforcing specific performance under the facts of the case we go to the very verge of liberality, and are agreed that the fault in the case is so exclusively upon the shoulders of the complainant that she should pay costs of the court below. In this court we make no award of costs.

The other Justices concurred.