JOHN H. LLOYD AND SARAH J. LLOYD v. MAGGIE HOLLENBACK, ALBERT HOLLENBACK, AND MARTHA J. KELLEY.

*Evidence — Matters within knowledge of decedent — Contract — Specific performance—Statute of frauds.*

1. 3 How. Stat. § 7545, which prohibits the "opposite party," in a suit prosecuted or defended by the heirs, assigns, devisees, legatees, or personal representatives of a deceased person, from testifying at all to matters which, if true, must have been equa ly within the knowledge of the decedent, applies to a daughter who files a bill to set aside a deed executed by her father in his lifetime, based upon his agreement to give her the property in consideration of a life support.[1]

2. Where a daughter and her husband, pursuant to her father's verbal agreement to give her a house and lot in consideration of a life support for her mother and himself, remove from their home in another city, and enter into the occupancy with her parents of the premises, and care for the mother until her death, and for the father until his remarriage, and make improvements and pay taxes on the premises, and pay the remainder of the purchase price, there is a sufficient performance of the contract to take it out of the operation of the statute of frauds.[2]

———

[1] See *Penny v. Croul*, 87 Mich. 29, for a review of the decisions construing this section of the statute; and for later decisions see *Ripley v. Seligman*, 88 Mich. 177; *Smith v. Smith Estate*, 91 Id. 7; *Letts v. Letts*, Id. 596; *Lilley v. Insurance Co.*, 92 Id. 153; *Insurance Co. v. O'Brien*, Id. 589; *Brennan v. Railroad Co.*, 93 Id. 160; *In re Dunlap Estate*, 94 Id. 11; *Fenton v. Miller*, Id. 204.

[2] See *Welch v. Whelpley*, 62 Mich. 15; *Carr v. McCarthy*, 70 Id. 258; *Kelsey v. McDonald*, 76 Id. 188.

Appeal from Wayne. (Gartner, J.) Argued November 16, 1893. Decided December 22, 1893.

Bill to set aside a deed, and for the specific performance of contract. Complainants appeal. Decree reversed, and one entered here for complainants, decreeing the title to be in complainant Sarah. The facts are stated in the opinion.

*George W. Bates,* for complainants.

*Wilkinson & Post,* for defendants.

GRANT, J. The bill in this case is filed to set aside a deed made by Nathaniel P. Hollenback to the defendant Maggie Hollenback, and to enforce the specific performance of a contract by which it is alleged that said Nathaniel agreed to convey the land in controversy to the complainant Sarah.

Complainant Sarah and defendants Albert Hollenback and Martha J. Kelley are children of Nathaniel P. Hollenback, now deceased, and defendant Maggie is his widow. Complainant John is the husband of Sarah. Nathaniel died December 13, 1890, aged about 90 years. He formerly lived in Ypsilanti, where, in 1869, he sold his home for $2,200. He then moved to Detroit, where he made a contract for the purchase of the land now in dispute, on which he paid the entire proceeds realized from the sale in Ypsilanti, leaving $700 still due on the contract for the purchase of the Detroit property. Sarah was then unmarried, and went to Detroit with her father and mother, with whom she remained until her marriage, which occurred soon afterwards. After living awhile in Chicago, she and her husband located in Saugatuck, Mich., where he was employed at a salary of $1,200 a year. The claim on the part of the complainants is that in April, 1871, her father

wrote her that if she and her husband would come to Detroit, and take care of him and her mother while they lived, he would give her the house and lot; that, after consultation with her husband, they concluded to accept the offer, and she so wrote her father. They moved to Detroit in 1871, and took possession under this agreement. The letters are lost. The mother was in feeble health, and, after a long illness, died, in 1875. After her death the father continued to live with them till 1882. He then, being over 80 years of age, left his home, and, without informing any of his family, married defendant Maggie, who was then about 40 years of age. He then removed with his wife to Petoskey, where they lived till 1883, when, desiring to return to Detroit, he demanded possession of the house, and complainants surrendered it to him.

Was the testimony of complainant Sarah competent, under 3 How. Stat. § 7545, it relating to facts equally within the knowledge of the deceased? Was the contract made? Was it performed by the complainants, so as to take it out of the statute of frauds? These are the three questions presented by the record.

1. The testimony of Sarah was incompetent. Complainants' counsel relies upon *Twiss v. George*, 33 Mich. 253, 255, wherein it was said:

"We do not think we are authorized to interpolate into the statute any such prohibition in controversies with third persons acting in their own right as purchasers during the life of the deceased, and not taking by any *post-mortem* estate."

The statute in existence at the time the case was heard in the circuit court provided "that, when a suit or proceeding is prosecuted or defended by the representative of a deceased person, the opposite party, if examined as a witness on his own behalf, shall not be admitted to testify," etc. 2 Comp. Laws 1871, § 5968. The law was amended

in 1875 so as to include "the heirs, assigns, devisees, lega-tees, or personal representatives." Act No. 155, Laws of 1875. This act took effect August 3, 1875. That case was evidently determined under the statute as it existed when the case was heard and the testimony given in the circuit court. Under the statute as it then existed, the testimony was clearly not prohibited. In the habendum clause in deeds, the usual terms used are "the grantee, his heirs and assigns." We are therefore of the opinion that the testimony of complainant Sarah is prohibited by this statute.

2. But we think the contract is sufficiently proven by evidence outside of the testimony of complainant Sarah. The testimony of the complainant John is direct and positive that the agreement was made. Three disinterested witnesses, one of whom is the daughter Martha, testify that Mr. Hollenback told them that he had made such an agreement. Besides, the condition and situation of the father and mother and the rest of the family are important considerations. Mr. Hollenback was a physician of some sort, and, for some time before leaving Ypsilanti, had but very little practice. He was at that time 71, and his wife 65, years of age. It is evident that he had not then succeeded in getting a practice in Detroit, and was in need of support. The son was married, and settled upon a farm. Martha had been married for several years. Sarah had lived with them the longest, and had assisted in taking care of them. They would naturally look to her when they required care and attention. It is evident that they needed some one to live with them, for the mother was infirm and feeble. The arrangement was entirely natural and reasonable. The complainants gave up a busi-ness in which they were doing well.

The principal evidence relied on to defeat the claim is certain letters written by Sarah after the second marriage of her father, in which it is claimed that she made no

direct assertion of any such contract. It is argued that, had it existed, she would have asserted it. While there is much force in this contention, we do not think it conclusive against her by any means. These letters were written in anger and indignation at her father for his clandestine marriage. But in the very first letter it is significant that she referred to a promise in this language: "You promised me this house, but you were only deceiving me, as in marrying. I did not believe you would ever marry." In a letter written by Sarah to defendant Maggie, October 27, 1890, after she had heard that her father was sick, she wrote: "I worked twelve years with a promise of a home." Under the clear proof of the contract, we cannot hold that these letters are controlling evidence that it was not made. We think the complainants' claim is fully sustained by the following authorities: *Twiss v. George*, 33 Mich. 253; *Lamb v. Hinman*, 46 Id. 112; *Welch v. Whelpley*, 62 Id. 15.

3. We think it entirely ·clear that the contract was performed on the part of the complainants. It is shown by a fair preponderance of the evidence that they took care of her father and mother as they agreed to do. She gave music lessons. He had a salary of from $700 to $1,200 most of the time, except after Mr. Hollenback succeeded in getting some practice in his profession, which appears to have been confined to treatment in his rooms, when he assisted the doctor for awhile. They paid part, if not all, of the balance due upon the contract for the purchase of the property. They also made improvements, and furnished money to pay the taxes. To hold otherwise would result in entirely discrediting their testimony, and in holding them guilty of perjury. We do not think such a conclusion warranted by the evidence.

The decree must be reversed, and entered here for the complainants, with the costs of both courts, to be paid out of the estate of Nathaniel P. Hollenback. It was not

agreed that complainant John should have any interest in the property. The entire title, therefore, is decreed to be in Sarah.

The other Justices concurred.