SIGLER *v.* SIGLER.

HUSBAND AND WIFE—STATUTE OF FRAUDS—SPECIFIC PERFORM-
ANCE.

    A husband and wife, who were in the joint possession of their
    homestead, the title to which was in the wife, entered into
    a verbal agreement, whereby the wife, who had determined
    to separate from the husband, was to take certain personal
    property, and, in consideration thereof, the husband was to
    have the right, during his natural life, to occupy certain
    rooms in the dwelling house, and to use a grapery and a
    barn situated upon the premises. Pursuant to such agree-
    ment, the wife removed the personal property, and the hus-
    band took possession of the rooms he was to occupy, after
    which the wife left him, and rented the remaining portion
    of the house. After the husband had enjoyed the undisturbed
    possession of the rooms for two years, his wife, insisting
    upon her legal title, brought suit to eject him, whereupon he
    filed a bill to enforce the specific performance of the verbal
    agreement. *Held,* that there was such a part performance
    as to take the contract out of the statute of frauds.

Appeal from Lenawee; Lane, J. Submitted February
18, 1896. Decided March 11, 1896.

Bill by Artemus Sigler against Jennie Sigler to enforce
the specific performance of a parol contract in relation to
certain lands, and to enjoin the further prosecution of a
suit to obtain possession of the premises. From a decree
dismissing the bill, complainant appeals. Reversed.

The object of this bill is to enforce the specific perform-
ance of a contract relating to land. Complainant and
defendant are husband and wife. They were married in
June, 1884. He was a widower 61 years of age, and she
was 30 years younger. He owned a homestead in the
city of Adrian, worth about $3,000. He and his first
wife had executed a mortgage upon it to his nephew in
Cleveland, Ohio, for $5,000. He failed in mercantile

business soon after his second marriage, and was in debt about $10,000. His stock of goods had been sold under a mortgage, and this homestead was all the property he possessed, except the household furniture situated therein. The bill sets forth that defendant harassed complainant by her repeated demands for a conveyance of this homestead to her; that he finally yielded to her demands to this extent: That it was agreed that she should pay $800 upon this mortgage, that he would pay the balance (amounting to $1,540.43), that the mortgagee should make an assignment of the mortgage to her, and that she should hold and keep it for their mutual benefit. This was done. She paid the $800, and the mortgagee, his nephew, took his note for the balance. The bill further alleges that she importuned him to have the mortgage foreclosed; that he finally yielded to her threats and importunities; and it was agreed that the mortgage should be foreclosed, the title taken in her name, that he would not redeem, and that the same should be their joint homestead, to be occupied, enjoyed, held, and owned by them together. This was done, and the title perfected in her; the amount of a foreclosure sale being the original amount of the mortgage and interest added. This was in 1886. They lived in and occupied the homestead as husband and wife until 1892, when she declared her determination to separate from him, and to sell or rent the property. The bill then alleges that it was agreed between them that she should take certain personal property, which was specified, and that—

"In consideration thereof he should have the right to live in, occupy, possess, and have, for and during his natural life, certain rooms, including a clothespress, in the rear upright part of the house, with the right of access to and from the same by way of a stairway leading thereto from a woodshed in the rear of the house, and also to have the use, possession, and occupancy of a grapery and barn situated upon the rear of the premises."

It is further alleged that this agreement was carried out; that she took the personal property away, and sold some of it; that the remaining furniture was moved into those rooms, of which complainant took possession; that defendant then left him, and rented the other portion of the house. For two years complainant was left in the undisturbed possession of these rooms. The defendant, thereafter, insisting upon her legal title, brought suit to eject the complainant therefrom, and thereupon he filed this bill. Proofs were taken in open court, and the bill dismissed.

*J. C. Winne* and *L. H. Salsbury*, for complainant.

*Watts, Bean & Smith*, for defendant.

GRANT, J. (*after stating the facts*). The learned circuit judge who heard the case filed a written opinion. He did not determine whether the last contract, as claimed by the complainant, was made. He held that the foreclosure proceedings were with the assent of the complainant, who hoped thereby to protect his property, and to keep it, for himself and wife, beyond the reach of his creditors, and that, therefore, he had no right which he could enforce, either in law or equity, after the maturity of the title in defendant. He then disposed of the case upon the ground that, at the time the last agreement was claimed to have been made, both the parties were in possession; that, if there was any change of possession, it was a restriction of it, and not the giving of an additional possession; and held that it was ruled by a case in 47 Mich. The opinion does not state what case, and counsel for complainant assert that it was *Murphy* v. *Stever*, 47 Mich. 522. Counsel for defendant assert that the judge had in mind *Peckham* v. *Balch*, 49 Mich. 179. The opinion of the judge contains the following statement:

108 MICH.—38.

"In view of her marriage relation, and what she had
done there, I think that the complainant could rightly
insist that the wife could not say that she had all the
money there was in this property, because, evidently,
from the testimony in this case, what was advanced by
Mr. Sigler, the nephew, to Mr. Sigler, the complainant
in this case, was a matter between himself and the
nephew, and it would, in the law, be the same as though
he had paid his own money for it.   But the surrender
of rights here was when he permitted the wife to take
this mortgage, and take the foreclosure deed in her own
name.   That was the time when he lost right, and he
has not, I think, made such a subsequent contract as
would enable him to retain this real estate."

We do not regard it as important to determine under
what arrangement the foreclosure proceedings took place.
The parties continued to live there for some years after-
wards.   If any affection ever existed between them,
which is very doubtful, they had evidently become thor-
·oughly estranged from each other.   She had determined
to leave him, and did leave him.   Both were in posses-
sion.   He was aware that she intended to leave him.   It
was, therefore, entirely natural that some arrangement
should be made to determine their rights in the future.
If any arrangement was made, it is important to first
determine what it was.   He positively asserts the agree-
ment as set forth in his bill of complaint.   She positively
denies it.   Had the circuit judge determined the question,
we might very properly say that his determination should
stand, since he was in better position to determine which
told the truth.   We must, however, determine the ques-
tion without the benefit of the conclusion of the circuit
judge.   The situation of the parties is important.   Com-
plainant was old and feeble.   He had lived in this home-
stead for 37 years.   He had no other property, and no
children.   Defendant had invested but $800 in it.   It is
not reasonable to suppose that he would give her other
property, to which she was not entitled, and abandon to
her his homestead besides.   She left him in the undis-

turbed possession for two years. One witness, a Mr. Doolittle, testified that he applied to her to rent the place, and that she then said that complainant "had part of it as his home there," and that he refused to take it for that reason. She at one time offered him $500 to leave the premises. We think the contract is established by a fair preponderance of the evidence.

We think, also, that there was such a part performance as takes the contract out of the statute of frauds, although it rested in parol. She had taken the personal property under the contract. He had taken possession of the rooms, grapery, and barn, and abandoned possession of the other part of the house. So far as the consideration to be paid by him was concerned, it was fully executed. It was also executed on her part, by leaving him in possession and taking possession of the other part, controlling and renting it. We do not think the case of *Peckham* v. *Balch* applies. It is rather controlled by *Murphy* v. *Stever*. Many authorities are cited by both parties, but we deem it unnecessary to refer to them. The rule is well established that part performance of a parol contract for an interest in lands is valid, and not within the statute of frauds, and that a court of equity will decree specific performance. An action at law for damages will not afford an adequate compensation. Complainant contracted for the possession of a part of his homestead as a place of shelter for the remainder of his life. He was entitled to the specific thing for which he had contracted and paid, and of which he was in possession.

It was not necessary to tender to defendant the money she had invested. This is not a suit to set aside her title. It is conceded that she has the title, subject to a life estate in a part of the premises.

The decree must be reversed, with the costs of both courts, and decree entered in this court for the complainant.

The other Justices concurred.