ATKINSON *v*. AKIN.

1. FRAUDULENT CONVEYANCES—POSSESSION OF TRUSTEE—RIGHTS OF EXECUTION CREDITORS—STATUTES.

Under 3 Comp. Laws, § 9224 (3 Comp. Laws 1915, § 12898), the rights of *bona fide* purchasers are acquired by execution creditors of a debtor where he holds the legal title to property which his wife claimed to have paid for and allowed a conveyance to be made to him, and he deeds the property to his son and his son's wife for the purpose of a reconveyance by them to the mother, such creditors making and perfecting levies upon the property before the latter deed is recorded and without knowledge of its existence, and whatever rights the wife has are inferior to the rights of such creditors.

2. FRAUDS, STATUTE OF—LAND CONTRACTS—ORAL CONTRACTS—WHEN VALID.

An oral contract for the purchase of real estate, followed by taking possession of the premises and making improvements, is valid and enforceable.[1]

[1] On the question of taking possession of real property as part performance to satisfy the statute of frauds, see comprehensive note in 3 L. R. A. (N. S.) 790.

197—Mich.—19.

3. VENDOR AND PURCHASER—POSSESSION OF PURCHASER—CONSTRUCTIVE NOTICE.

The possession of a contract purchaser is constructive notice of his rights to all, including creditors of the vendor, and there can be no innocent *bona fide* purchaser against him so long as he remains in open, uninterrupted, and exclusive possession of the premises.

4. FRAUDULENT CONVEYANCES—CONSIDERATION—BILL IN AID OF EXECUTION.

On a bill in aid of execution by creditors to set aside a deed to land given by a debtor to his son and son's wife, the contention that the deed was without consideration because the grantees paid nothing to the grantor was untenable where the father had himself paid nothing for the land and held legal title to the land simply as security for a loan made by the mother to the son.

5. APPEAL AND ERROR—INTRODUCTION OF EVIDENCE—PRACTICE.

Under the judicature act, Act No. 314, Pub. Acts 1915, chap. 17, § 5 (3 Comp. Laws 1915, § 12493), the authority of the court in chancery cases over the introduction of evidence is greater than under the old practice, and the court is required to rule authoritatively upon all objections, and parties cannot, as a matter of right, continue a line of evidence against sustained objections.

6. SAME—EVIDENCE ADMITTED OVER OBJECTION—PRESUMPTIONS.

It will be presumed on appeal in an equity case that evidence admitted over objection at variance with the bill was disregarded where no opinion of the trial court appears in the record.

7. SAME—PLEADINGS—PRESUMPTIONS.

It will be presumed that all allegations in an answer in an equity case deemed important are stated, where the printed pleadings are abbreviated and the record does not contain the answer in full.

8. SAME—SCOPE OF REVIEW.

On a bill in aid of execution by creditors to set aside a deed to land given by a debtor to his son and son's wife as in fraud of creditors, on appeal, the case being heard *de novo*, plaintiffs are entitled to have their objection to testimony relating to possession of the land by the son on the ground that the answer does not allege possession preserved in the record, although the result in the trial

court was favorable to them, for, with the testimony eliminated, the case might assume a different aspect.

9. FRAUDULENT CONVEYANCES—JUDGMENT CREDITORS—BILL IN AID OF EXECUTION—PLEADINGS—POSSESSION.

The matter of possession of land is presented on a bill in aid of execution by judgment creditors to set aside a deed by the debtor as in fraud of creditors, where no positive allegation of possession is made in the answer by defendants, grantees of debtor, but ownership of the premises is repeatedly asserted and it is stated that the land, as the result of improvements, is worth a certain sum.

10. APPEAL AND ERROR—AMENDMENTS—PLEADING.

The Supreme Court may permit the amendment of pleadings to conform with the testimony in a chancery case where the subject is related and has been fully gone into and there is no claim of surprise.

Appeal from Oceana; Sullivan, J. Submitted June 8, 1917. (Docket No. 15.) Decided July 26, 1917.

Bill by Robert C. Atkinson and others against John C. Akin and others in aid of execution. From a decree for plaintiffs, defendants appeal. Reversed in part.

*A. S. Hinds,* for plaintiffs.

*F. E. Wetmore,* for defendants.

STEERE, J. Plaintiffs filed this judgment creditor's bill in aid of execution, on March 22, 1916, to set aside a deed given by defendant John C. Akin and his wife, Nettie, to their son, Claude L. Akin, and his wife, Rena, dated July 6, 1914, recorded June 8, 1915, covering block 125 and the south 10 feet of block 124 in the village of Shelby, in Oceana county, and a farm of 120 acres located in Elbridge township, in said county.

Plaintiffs had recovered against said John C. Akin three judgments amounting to over $2,000, and, being unable to otherwise collect the same, levied *alias* execu-

tions on this property, two November 9, 1915, and one on January 13, 1916.

Defendants Claude Akin and wife disclaim any interest in the village property which was conveyed by them to the mother, Nettie Akin, stating that the father, John, conveyed it to them for the purpose of conveying it to the mother, which they did.

The records of deeds of Oceana county show that the judgment debtor, John Akin, had held title to the Shelby village property since 1901, and it was shown without dispute that he had been in actual possession of it from 1901 until September 15, 1915, during which time the title stood in his name. The record also shows that John C. Akin received a deed in November, 1904, conveying to him, without qualifications, title to the Elbridge township farm, which stood of record in his name until he conveyed it to his son and wife in July, 1914. They, however, had been in possession of this property claiming ownership during all the time he held title to it.

The substance of plaintiffs' lengthy bill of complaint is that the indebtedness of John Akin, represented by the judgments under which they claim execution liens upon this real property, was incurred while he held title to it, and credit was extended to him on the strength of his ownership; that he subsequently conveyed it to his son, Claude, and wife without consideration and to defraud his creditors; that he shortly thereafter disposed of or sequestered what personal property he owned and went west, to Montana, where he took up a homestead; that the members of his family who thus acquired title to his property confederated with him to that end, and are not innocent parties; that executions previously issued against him upon those judgments were returned unsatisfied, and appropriate aid of the court is asked to enforce these levies.

Defendant John Akin suffered himself to be defaulted and·was not present or represented by counsel at the hearing. The other defendants appeared and made answer, claiming in their answer and at the hearing to have paid for and been the equitable and actual owners of the property during all the time John Akin held the legal title; that it was purchased and paid for by them in the first instance, although he took title thereto in his own name; deny that he has or ever had any money invested, interest or ownership in the property; deny all knowledge of or responsibility for any indebtedness of his; and contend that the deeds from him to them were given to and received by them in good faith as the rightful owners. to place the legal title where it belonged.

The trial court granted in full the relief asked by plaintiffs, setting aside as to their levies the deed of July 6, 1914, from John Akin to his son, Claude, and wife, and their deed of January 3, 1916, to the mother, Nettie A. Akin, of the village property.

As to the Shelby village property we see no escape from the conclusions reached by the trial court. Defendant Nettie Akin's claim is that she paid for this property, which was conveyed to her husband with her knowledge and consent. His tastes and activities ran to horses and their uses for livery, breeding, and trafficking purposes, in which he was more optimistic than successful. After the purchase of this property, upon which there was a barn, or sales stable, he held title to, and had possession of it, ostensibly as owner, using it in his business until he deeded it to his son and wife, who claim no interest in it, and went west. His wife, who testified that "he has tried all the ways he could to make money with horses and failed," was engaged while he possessed this property in the dressmaking business, with apparently better success. Although, with comparatively short intermissions, she

stood by him faithfully and condoned his shortcomings, litigation over property she successfully claimed to own which his creditors sought to realize from, and her charges against him in a short-lived divorce case which she began and withdrew, together with contradictory statements and qualified admissions, make plain that she knew of his financial delinquencies, and that he was obtaining credit on the strength of his ownership of this property. No other reason is shown why title to it should have been taken and kept in his name if it was bought by and belonged to her. Her deed to the property, of which they are not shown to have known, was not recorded until after plaintiff's execution levies were made and perfected. The execution plaintiffs have all rights of *bona fide* purchasers under section 9224, 3 Comp. Laws (3 Comp. Laws 1915, § 12898), and whatever rights she has in the premises by virtue of her deed are subordinated to the prior recorded lien their levy established. *Lachelt* v. *McInerney*, 185 Mich. 413 (152 N. W. 86).

The facts as to the Elbridge township land present a different situation. Claude Akin took possession of it May, 1904, before it was deeded to his father in November, 1904, having with the assistance of his mother contracted to buy it from the prior owner at an agreed price of $850. He was then a young man, unmarried, had accumulated $150 in money, and owned a team. Just prior to the purchase of this land he was planning to buy 40 acres near the village of Shelby, when his uncle, who lived near this tract, called attention to it and told him it could be bought cheap. He looked it over, discussed the matter with his people at home, and decided to buy it if he could. His mother encouraged him and offered to assist. The land was purchased and the $850 paid the seller, Claude furnishing the $150 which he had, and his mother the balance. A portion of the tract was swampy, and a portion of it

good agricultural land. It was wild and unimproved, stripped of its valuable timber, had upon it some old, dilapidated buildings of little value, formerly used in lumbering operations; the principal ones consisting of an uninhabitable shanty and a camp barn built of logs. Being unable to occupy the buildings, owing to their condition, he at first camped upon the land and commenced a clearing preparatory to putting in some crops that year, which he did. He thereafter continued to reside upon this place up to the time of the trial, in exclusive possession under claim of ownership, working upon and improving it. At the time of the trial he had over 60 acres under cultivation, a comfortable house, good barn, fences, and other improvements, and had developed it into a valuable, improved farm said to be worth in the neighborhood of $3,000. When he married he took his wife to the home which he had prepared, and the testimony is undisputed that from the time he first went upon this land, over 13 years before the trial, he has lived there continuously, with the exception of part of one winter before he was married, making and calling it his home, steadily working upon and improving it as his own property, in open, notorious, and exclusive possession with his wife under claim of ownership. He was so in possession of it when his father's indebtedness accrued to plaintiffs, and when their executions were levied upon the land he had paid for it in full according to his contract, and with his wife held title to it of record.

The only disturbing element in this transaction upon which plaintiff relies is that shortly after the land was purchased in 1904 and Claude had moved upon it, where he was at work clearing it, his father, John Akin, took the deed of it from the vendor in his own name. It is claimed that this was done and acquiesced in on the father's initiative, to secure the mother for money she had advanced to help pay for the place.

It is shown in that connection that the father himself paid nothing, never lived upon or used the land, did not clear, cultivate, or plant any of it, made no improvements upon it, and claimed no interest in or share of the crops raised by Claude, who, independent of his father, worked faithfully during the succeeding years developing and paying for the farm, making the last payment to his mother in June, 1914, shortly thereafter receiving his deed, made and dated July 6, 1914.

It is undisputed that Mrs. Akin had received some money from her father's estate and was successful in her dressmaking business, contributing liberally at times, if unwisely, to her husband's business ventures. In also helping her son to purchase this land her confidence was apparently not misplaced; for he not only made a good farm and home of it for himself, but before he was married he paid her $300 of the $700 she had advanced him, and subsequently, with the assistance of his wife, paid the balance. Mrs. Akin testified:

That at the time her husband took the title to the land it was not altogether agreeable to her, and she protested, but their relations were then harmonious, and she had confidence in him. "It was made out, and he [her husband] always had a kind of way about it —he always said that I was his'n, and that mine belonged to him. * * * I didn't make any serious objections, because I knew and he knew that it was for Claude, and Claude had $150 in it, and he was to pay the rest and have the place. * * * But he said, 'Well, what is the difference; Claude will soon have it paid for, and we will give the deed to him.' "

The substance of her not entirely satisfactory explanation is that, being a horseman, John always wanted to do the driving whenever there was any opportunity, and as long as he drove satisfactorily she had no serious objection between themselves to his holding the lines in family matters.

That Claude Akin was a *bona fide* purchaser of this land for $850, under an oral contract with the owner of the title, when he went into possession of it in May, 1904, that there was then part performance and later full performance on his part as a result of which, and in compliance with the contract so far as he is concerned, he ultimately secured a good title of record to the property, is undisputed.

It cannot be questioned that an oral contract for purchase of real estate followed by taking possession of the premises and making improvements is valid and enforceable. Section 9513, 3 Comp. Laws (3 Comp. Laws 1915, § 11979); *Bomier* v. *Caldwell*, 8 Mich. 463; *Davis* v. *Strobridge*, 44 Mich. 157 (6 N. W. 205); *Murphy* v. *Stever*, 47 Mich. 522 (11 N. W. 368); *Peckham* v. *Balch*, 49 Mich. 179 (13 N. W. 506); *Lloyd* v. *Hollenback*, 98 Mich. 203 (57 N. W. 110); *McIntosh* v. *Hodges*, 110 Mich. 319 (68 N. W. 158, 70 N. W. 550); *Cowley* v. *McGregor*, 163 Mich. 517 (128 N. W. 739); *Beemer* v. *Hughes*, 179 Mich. 110 (146 N. W. 198).

In *Corey* v. *Smalley*, 106 Mich. 257 (64 N. W. 13, 58 Am. St. Rep. 474), the law of notice by possession is thus concisely stated, with citation of numerous Michigan cases:

"One who purchases land occupied by another than the grantor is chargeable with notice of the rights of the occupant. Possession of land by a contract purchaser is constructive notice of his rights."

When plaintiffs perfected their execution levy they had all and only the rights of a *bona fide* purchaser; but at that time Claude Akin had fulfilled his contract, received his deed, and recorded it. Conceding, which the statute does not provide, that when they extended credit to John Akin on the strength of his record title their rights against this property would be as those of a purchaser under like circumstances, they are in no

better position for Claude's possession as a contract purchaser was from the beginning constructive notice of his rights, and there could be no innocent *bona fide* purchaser against him so long as he remained in open, uninterrupted, and exclusive possession of the property, managing and controlling it under a claim of ownership.

Plaintiffs seek to test this question by the deed John Akin gave Claude and wife on July 6, 1914, under the claim that it was void for want of consideration, because it is admitted "that Claude Akin and wife never paid John C. Akin anything for this land." It is equally true on the undisputed evidence in this case that John C. Akin never paid any one anything for this land, never purchased, owned, or had an interest in it, although he held the legal title in his name as security for what his wife had loaned their son until the latter had completed his payments, apparently on the domestic theory that his wife and all she had "was his'n." This theory seems to find support in plaintiff's brief, for it is urged that the earnings of the wife belong to the husband; that Mrs. Nettie Akin's meager patrimony from her father's estate is shown to have been but $280, while during her long coverture she earned thousands of dollars as a dressmaker, a part of which she loaned to Claude to buy this land. In this aspect of the case might be found some reason for John taking the security in his own name, and if it is correct Claude did pay his father for the deed all he asked and all that his security was held for when he paid his mother with John's approval and ratification. John had said to his protesting wife, "What is the difference; Claude will soon have it paid for, and we will give the deed to him"—which they did do very soon after the last hundred dollars was paid. And what was the difference so far as Claude was concerned? He did not, and under the circumstances

could not, dictate between his father and mother who should hold the security. He paid the balance he owed for the farm as and to whom he had agreed to, and received his deed of it when and as both of them had conceded he would be entitled to it. In the meantime his part performance had validated his oral contract of purchase, and his continued, open, and exclusive possession was constructive notice to the world of his rights under the contract, and under the facts disclosed here we are well satisfied his father and mother might have been compelled to execute a deed to him upon payment of the full amount due and agreed to had they refused. We discover no question of resulting trust under the proofs in this record. Claude's rights were enforceable against the holder of the record title, and his possession was constructive notice to prospective purchasers or creditors of his father of those rights until he received and recorded his deed, or was dispossessed for nonperformance.

It is further urged in behalf of plaintiffs that all testimony relative to possession of the farm by Claude was erroneously admitted against their objection, timely made to it in the trial court on the ground that the answer does not allege possession. When testimony was first offered upon the subject, the court overruled plaintiffs' objection with the remark, "I am going to receive it," and on subsequent objection ruled that such testimony would stand. Under judicature act, § 5, chap. 17 (3 Comp. Laws 1915, § 12493), the authority of the court over introduction of evidence is greater in chancery cases than under the old practice. The court is now required to rule authoritatively upon all objections, and parties cannot as a matter of right continue a line of evidence against sustained objections. No opinion of the trial court appears in the record, and to what extent, if at all, the court took that testimony into consideration is not clearly disclosed.

Inferentially it was disregarded. An amendment might with propriety have been granted, if asked, and time given to plaintiffs if surprise was claimed, but the court's ruling being favorable to defendant no leave was asked. Apparently both sides had opportunity to go into that subject as fully as they desired, and no denial is or was made of Claude Akin's continued possession of the farm. The case is heard here *de novo*, and plaintiffs are entitled to have the objection preserved in the record passed upon here, although the result in the trial court was favorable to them; for with the testimony as to possession eliminated the case might assume a different aspect.

The printed pleadings are somewhat abbreviated, and the record does not contain defendants' answer in full, although we assume all allegations deemed important are stated. No positive allegation of possession appears, but ownership of the premises is asserted repeatedly with details of circumstances. In paragraph 24 we find, "and Claude L. Akin and Rena C. Akin say that they are owners of the land in the township of Elbridge above described and that the same by reason of improvements made thereon by them is now of the value of $2,000 and upwards," which at least suggests possession, and no claim is made by plaintiffs of surprise. We are inclined to the view that the matter of possession might properly be considered as before the court under present pleadings in this controversy.

It is, however, within the power of this court to permit amendment of pleadings to conform with the testimony where the subject is related and has been fully gone into with no claim of surprise. Under the circumstances we deem it equitable and proper to disregard this technical objection.

The decree of the court below will be affirmed as to John C. Akin and Nettie A. Akin, and the relief asked

as to the Elbridge township farm, owned by Claude L. Akin and Rena C. Akin, denied. Plaintiffs are entitled to costs in full on default against John C. Akin. The three answering defendants combined in their defense and made joint answer. Though successful as to their farm, Claude and Rena Akin participated in conveying from John Akin to Nettie Akin her claimed title to the village property and sought with their own to sustain the same. In this they were unsuccessful. Plaintiffs having also prevailed in part and failed in part, as have the three answering defendants, no costs will be awarded to either party, except against John C. Akin as above stated.

A decree of this court may be prepared in harmony with this opinion.

KUHN, C. J., and STONE, BIRD, MOORE, BROOKE, and FELLOWS, JJ., concurred. OSTRANDER, J., did not sit.