VERMOORTEL *v.* VERMOORTEL.

APPEAL AND ERROR — PLEADING — AMENDMENTS — HEARING UPON MERITS.

> Where the wife's bill for divorce was amended at the hearing to ask for annulment of marriage claimed by defendant to have taken place after he had procured a decree of divorce from her while she was out of the State, an objection that the court, on the amended pleadings, could not grant 'a divorce and could not dispose of property matters is technical, and will be disregarded by this court, in view of the fact that the parties had a full hearing upon the merits, and this court has power to permit amendment of pleadings to conform with the testimony.

Appeal from Wayne; Mayne, J., presiding. Submitted April 24, 1919. (Docket No. 123.) Decided May 29, 1919. Rehearing denied July 18, 1919.

Bill by Marie Vermoortel against Victor Vermoortel for a divorce. From a decree for plaintiff, defendant appeals. Affirmed.

*R. D. Haley* and *J. W. Bennett,* for plaintiff.
*Donnelly, Hally, Lyster & Munro,* for defendant.

MOORE, J. The parties to this litigation were married in Belgium in 1899 and came to America a few years later. At first they settled in Mississippi, where they lived together for 26 months. They then separated, plaintiff claims because of the failure of the husband to get work. The wife took her two children to New Orleans and afterwards to Deerfield, Wisconsin, where she supported the children until she came to Detroit in 1911. The defendant claims plaintiff left him because she was infatuated with another man, which claim is denied by the plaintiff.

In 1911 plaintiff came to Detroit with her children and resumed her marital relations with her husband soon after and lived with him until 1917. The parties had disagreements and finally separated. In February, 1917, the plaintiff filed this bill of divorce on the ground of extreme cruelty. An answer was filed and in March, 1918, a hearing was entered upon in open court. The defendant when a witness, though he had not mentioned the fact to his lawyer, when the answer was prepared, testified that when the plaintiff was absent from him he had procured a divorce, and that when she came back to him in 1911 he told her about it and that they were remarried before a justice of the peace. Counsel for the plaintiff claimed to be taken by surprise and asked leave to amend his bill of complaint so as to ask for an annulment of the marriage of 1911. This he was allowed to do and the hearing was again resumed. The plaintiff denied that she was informed of the divorce or that another marriage ceremony took place, but insisted the defendant told her the Belgian marriage still remained good and that they went to living together, relying upon that fact.

When the defendant was a witness and testifying as to the desire of the mother of the plaintiff that the parties should go to living together the record discloses the following:

"I would like to have you take her back again with you home and if I could help her I would do all I could. She says, 'Do you think you could take her back again?' I says, 'I don't know, I had better see her.'

"Q. You finally got together and lived as husband and wife?

"A. Yes.

"Q. And you married her?

"A. We were married again by a justice of the peace. I got a divorce when she was living with the other fellow, and we were married again. I got my divorce,

yes, when she was gone.  I got it here in Detroit. She was in Wisconsin at that time.

"*Q.* Let me see your divorce decree.

"*A.* When I got home I gave her what was left; I didn't take her money.  (Witness produces papers.)

"*The Court:* This is a marriage license; this is not a divorce.  Where did you get your decree?

"*A.* I could not tell.

"*The Court:* Who married you?

"*A.* You got me there.

"*The Court:* This doesn't show a marriage, it shows a license.  It doesn't show there was any marriage.

"*Q.* You were not married again, you went to living together again.  Who married you?

"*A.* It was in the building here.  I think it was in the ground floor.

"*Q.* What judge was it?

"*A.* I don't know.

"*The Court:* You had no marriage ceremony performed; you were not married under this license, were you?

"*A.* That is all I know.

"*The Court:* (To the plaintiff) Were you married in 1911?

"*A.* I don't know."

The court entered a decree which is very inartificially drawn, which reads in part as follows:

"That when defendant requested plaintiff to come and live with him as his wife, defendant knew he was deceiving his wife into believing that they resumed relations as husband and wife under the marriage of 1899, that by the accomplishment of such renewed marriage relation by defendant, Victor Vermoortel, the defendant deceived his wife by false and wilful suppression of the true state of facts till he disclosed them at the hearing of this cause, in March, 1918, at which time plaintiff, Marie Vermoortel, learned for the first time of such divorce in 1910, that after said hearing the plaintiff was given leave to amend her bill so that it would include a prayer for the annulment of such so-called common-law marriage, by an order of this court made on April 18, 1918, and the

defendant was then and there granted further time to make answer to such amended bill, which said answer was made and filed by the defendant about May 17, 1918, and thence said cause came on for further hearing on said new pleadings but no new material facts were adduced therefrom and thereby; that the defendant has been guilty of the material facts charged in said bill and the said amended bill:

"On motion of Frank E. Whipple, attorney for the plaintiff, it is ordered, adjudged and decreed and this court by virtue of the authority therein vested, and in pursuance of the statute in such case made and provided, doth order, adjudge and decree that the so-called common-law marriage be, and the same hereby is set aside and vacated and declared to be null and void and of no effect whatever, and was null and void from the beginning. And the said parties are, and each of them is free from the obligation thereof and an annulment of the said marriage is hereby decreed."

The case is brought here by appeal.

It is the claim of the plaintiff that the decree not only annulled what defendant calls a marriage in 1911, but that it is a divorce from the marriage that took place in Belgium. It was claimed on the oral argument by counsel for defendant that the divorce proceedings prior to 1911 dissolved the Belgium marriage, and that from then on the relations of the parties was that of common-law husband and wife.

We quote from the brief of counsel for appellant:

"It is perfectly apparent from a reading of the brief that even at this time, plaintiff is not aware of the change which took place in this lawsuit when the pleadings were amended to show the transaction of 1911. When that amendment was made, plaintiff was no longer seeking a divorce, but was striving to have the relationship, whatever it might be called, which was entered into between herself and the defendant, declared a nullity. A bill filed to have a marriage declared a nullity and a bill seeking a divorce are two very different things and the law bears very differently upon each of those two situations."

It is argued that under the amended pleadings the court could not grant a decree of divorce and that under a bill for the annulment of a marriage the court could not make a final disposition of the property rights of the parties. Some light may be shown as to how the trial judge regarded the decree from the fact that the decree makes a full disposition of the property rights between the parties. There has been a full hearing upon the merits.

In *Atkinson* v. *Akin,* 197 Mich. 289, 300, it was said:

"It is, however, within the power of this court to permit amendment of pleadings to conform with the testimony where the subject is related and has been fully gone into with no claim of surprise. Under the circumstances we deem it equitable and proper to disregard this technical objection."

We think this language is especially applicable to the case before us.

The decree is affirmed, with costs to the plaintiff.

OSTRANDER, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred. BIRD, C. J., did not sit.