HARGIS *v*. EDRINGTON. .

## Opinion delivered June 15, 1914.

1. SPECIFIC PERFORMANCE—VENDEE IN POSSESSION.—A vendee in possession is not barred from suing for specific performance, by delay for any period, in bringing his action, his possession being the continuous assertion of his claim; he may rest in security until his title or right of possession is attacked. (Page 436.)

2. SPECIFIC PERFORMANCE—ABANDONMENT BY VENDEE.—H. agreed to purchase land from E. in 1893. H. died in 1896 without paying for the land. *Held*, the widow and heirs could not maintain a suit for specific performance against E. in 1910, where the evidence showed an actual abandonment of the sale by both parties, and a restoration of the property to the vendor, E., notwithstanding H. and his heirs held possession of a small portion of the land. (Page 437.)

3. SPECIFIC PERFORMANCE—PROMPT ASSERTION OF RIGHT—RESCISSION.—It is the duty of the vendee of real estate to assert his intention to perform his contract of purchase within a reasonable time, when he sees that the vendor is treating the sale as having been rescinded, otherwise he can not require the vendor to specifically perform. (Page 437.)

Appeal from Bradley Chancery Court; *Zachariah T. Wood*, Chancellor; affirmed.

### STATEMENT BY THE COURT.

J. T. Edrington executed a bond for title to J. A. Hargis for sixty acres of land on April 25, 1893, for the consideration of $40 in cash and a promissory note due November 1, 1893, for $70 bearing interest at the rate of 10 per cent per annum from date until paid. Hargis owned a tract of land adjoining that described in the bond for title, of which he had cleared a small part, and in addition he cleared two acres of the Edrington land, and some time before his death he placed some lumber on this land for the purpose of erecting a residence, but after his death the members of his family used this lumber in building a residence on land to which Mr. Hargis had a deed.

Mr. Hargis died in February, 1896, without having paid anything on his note, and no part of this note has since been paid. But it appears that soon after the death

of Mr. Hargis, his eldest son spoke to Mr. Edrington about an extension of time in which to pay the note and secure a deed, and it is undisputed that this extension was given; but it is also undisputed that this extension was upon condition that interest should be paid at the rate of 5 per cent, and no interest was ever paid.

Mr. Edrington testified that nothing further was said to him about the purchase of the land, and that no interest was paid, and that he waited until 1903 to give the Hargis heirs an opportunity to comply with the contract of their ancestor for the purchase of the land; and that since that time he continuously paid the taxes until August 7, 1907, at which time he conveyed the land to W. T. St. John, one of the appellees herein, who sold the pine timber on the land to the Bradley Lumber Company, another appellee. St. John began to pay taxes on the land after his purchase and continued to do so until the sale of it to his son before the institution of this suit. This son of St. John cleared a portion of the land and began to cultivate it, and was occupying it prior to the time of the institution of this suit on July 9, 1912. St. John, appears also, prior to the institution of this suit, to have borrowed a sum of money, and to have given a deed of trust to this land. The lumber company cut and removed the timber from the land, and its representative, as well as Mr. St. John, claim that they had no notice or knowledge of the claims of the Hargis heirs prior to their purchase.

On January 14, 1910, the children of J. A. Hargis, who were then minors, obtained an order from the circuit court, removing their disabilities of nonage for all purposes, and they were authorized by the court to transact all business as though they were of full legal age, and on the 14th of April, 1911, they traded, in conjunction with the adult heirs, a portion of the land to which their father had a deed, for six acres of the land described in the bond for title, and the six acres thus conveyed to them included the two acres which their ancestor cleared and put in cultivation. All the heirs signed the deed to St.

John, and requested that St. John make his deed to W. C. Hargis, which was done.

The proof shows that at the time of the execution of the bond for title, the land was worth only about the sum Mr. Hargis agreed to pay for it, but that it has since gradually enhanced in value. This W. C. Hargis, who was the eldest son of J. A. Hargis, made a tender in the spring of 1912 to Mr. Edrington for himself and the other Hargis heirs of the balance of unpaid purchase money, with interest thereon, but the tender included only the amount of the note and interest and was declined. Whereupon this suit was brought by the widow and heirs of J. A. Hargis to enforce the specific performance of the bond for title. The court found that the Hargis heirs were estopped from setting up any claim to the land in suit, and were barred of any rights of recovery by reason of estoppel and laches and ordered that the complaint be dismissed for want of equity, and this appeal was prosecuted from that decree.

*E. E. Williams,* for appellants.

Appellants are not barred by estoppel. 91 Ark. 148; 33 Ark. 465; 85 Ark. 556.

They are not barred by laches. The evidence shows that they had continuous possession of the land under bond for title until April 24, 1911, and this suit was filed July 19, 1912. 130 S. W. 968; 146 S. W. 135; 81 Ark. 296; 83 Ark. 154; 73 Ark. 491.

*D. A. Bradham,* for appellee Bradley Lumber Company.

While time would not be considered of the essence of the contract because there is some evidence of a waiver on the part of Edrington to enforce the contract, yet this would not, and should not, give Hargis nor his estate an indefinite time in which to pay the note and demand a deed from Edrington. 77 Am. St. Rep. 848; 68 Am. Dec. 87.

A mere oral promise to extend time is not binding upon the vendor. 117 Am. St. Rep. 625.

Appellants were required not only to perform their part of the contract within a reasonable time, but also to show good cause for delay in not making a reasonably prompt payment. 25 Ark. 143.

Under the changed conditions brought about by the failure of Hargis and his estate to perform his part of the contract, and in view of the fact that appellees, especially Bradley Lumber Company, could not be placed *in statu quo,* it would be inequitable to require Edrington to make title to appellants. 104 Am. St. Rep. 275.

*J. R. Wilson* and *B. L. Herring,* for appellees Edrington and St. John.

Ten years elapsed from the date of the bond for title before Edrington took the land back and began paying taxes on it, and after he sold to St. John, the latter continued to pay the taxes. By the exchange of land with St. John, whereby they acquired title to a portion of the land in question, appellants recognized the rescission of the old contract, and the St. John and Edrington title. Appellants estopped themselves from any further claims to the land. Cases cited by appellants, 91 Ark. 148, and 33 Ark. 465, but strengthen appellees' position.

In the matter of specific performance, although time is not ordinarily essential, yet, as a general rule, it is material, and in order that the default may not defeat a party's remedy, the delay which occasioned it must be explained and accounted for. Appellants are barred by their own laches. 4 Pomeroy, § 1408; 146 S. W. 495.

SMITH, J., (after stating the facts). We think the chancellor properly dismissed the complaint in this cause for the want of equity. It is true that a vendee in possession is not barred from suing for specific performance by delay for any period in bringing his action, his possession being the continuous assertion of his claim. He may rest in security until his title or right of possession is attacked. *Wright* v. *Brooks,* 130 Pac. 968. Nor is time of the essence of this contract. But the evidence shows that the appellants did nothing toward the performance of their contract. They offered evidence to the effect

that an extension of time was given, and that they were to pay interest at the rate of 5 per cent; but Edrington's evidence was that only a reasonable time was given in which the payment was to be made at this rate of interest. The original note bore interest at the rate of 10 per cent. Appellants failed to pay the interest, and had apparently abandoned their claim to the land and ceased paying taxes upon it, and for five years these taxes were paid by Mr. Edrington. Appellants stood by and saw Mr. Edrington sell the land to St. John, and permitted St. John's vendee to remove considerable timber from the land, and they saw St. John's son enter upon the land and clear and improve portions of it, and after the disabilities of the minors had been removed, they made a trade with St. John, the consideration for which was a deed conveying to W. C. Hargis a portion of the land described in the bond for title, which included the only part of the land which the Hargis heirs had actual possession of. From 1903, when Edrington took possession of the land until the spring of 1912, when the tender was made, there was no assertion of title to any of this land except such as resulted from the occupancy of the two acres, which they do not claim because of their conveyance to St. John, which included it.

During this time, the situation of the parties had changed to some extent. Portions of the land have been cleared and improved and rendered more valuable, and these improvements were induced by the nonassertion of any claim upon the part of the Hargis heirs. Moreover, the tender which was made did not include the taxes which had been paid since Mr. Edrington took possession of the land in 1903, and since that date no taxes have been paid by the Hargis heirs, and Edrington and his vendees exercised all the acts of ownership over the land, of which it was capable, except the small clearing of two acres.

We think the evidence fairly shows an actual abandonment of the sale by both parties and a restoration of the property to the vendor, notwithstanding the pur-

chaser's possession of a small portion of the land. It was their duty to assert their intention to perform their contract of purchase, within a reasonable time, when they saw their vendor was treating the sale as having been rescinded. "Specific performance is relief which the courts will not give unless in cases where the parties seeking it come as promptly as the nature of the case will permit." *Uzzell* v. *Gates*, 103 Ark. 191, and cases cited. The decree is therefore affirmed.