GENERAL MORTGAGE CORPORATION
*v.* H. K. PEACOCK et al

CA 79-169                                   594 S.W. 2d 35

Opinion delivered January 16, 1980
Rehearing denied February 20, 1980
Released for publication February 20, 1980

1062

*Lightle, Beebe & Raney* and *Roscopf & Epes, P.A.*, by *Charles B. Roscopf*, for appellant.

*Paul Petty*, for appellees.

GEORGE HOWARD, JR., Judge. This is an appeal from a judgment rendered by the trial court, without the aid of a jury, denying both appellant and appellees damages in a breach of contract action involving a contract for sale of land.

While the trial court made no definite findings, the court held that "neither party met the burden of proof on the issue of damages". However, appellant was permitted to recover the $10,000.00 earnest money that it deposited with the escrow agent.

The force of appellant's argument for reversal is: the trial court committed error in holding that appellant did not meet the burden of proof on the issue of damages.

It is widely accepted that the findings of a trial judge sitting as a jury deserve the same weight and consideration as the findings of a jury when his findings are supported by substantial evidence. Substantial evidence means legal, credible and persuasive evidence sufficient to support the action of the court.

We now turn to the record before us in order to determine whether the evidence is sufficient to support the holding of the trial judge.

On November 24, 1972, appellant, as purchaser, and appellees, as sellers, executed an offer and acceptance to purchase 3800 acres of land in White County for $532,000.00 — a fixed rate of $140.00 per acre. Appellant paid $10,000.00 as earnest money, to Standard Abstract and Title Company, escrow agent, which was to be applied ultimately to the purchase price. Appellant agreed to pay $75,000.00 at the closing of the transaction and to assume a first mortgage held by Northwestern Mutual Life Insurance Company securing an indebtedness of $188,000.00, payable in annual install-

ments of $22,500.00, consisting of principal and interest. The offer and acceptance specified that appellant was to pay the next annual installment becoming due January 1, 1973. Appellant also agreed to assume a second mortgage in favor of Agristor securing a debt for $25,000.00. The balance of the purchase price, $244,000.00, was to be paid in ten annual installments with interest at the rate of 6% per annum.

On January 10, 1973, appellant's attorney sent the following communication to appellees' attorney:

Dear Mr. Peacock:

I received the abstracts today. We need your directions as to where and to whom General Mortgage should direct payment due pursuant to terms of the Earnest Money Contract.

General Mortgage is prepared to forward the 'preclosing payment', as provided in the contract upon receipt of your directions.

On January 16, 1973, appellees' attorney submitted the following letter to appellant's counsel:

Dear Mr. Knight:

Payment on the Mortgage of the Peacock Ranch should be made to Northwestern Mutual Life Insurance Company, Box 50521, Milwaukee, Wisconsin 53201. The loan number is F323007 and the principal due as of January 1, 1973, is $7,500.00 along with interest of $15,000.00 making a total of $22,500.00.

Please mail me a copy of a financial statement on your client, General Mortgage Corporation and a corporate resolution authorizing Paul Chambers to execute the referenced land purchase contract.

On January 31, 1973, appellant advised appellees that appellant was unwilling to accept title of the property as reflected by abstracts delivered to appellant on January 10th and, as a consequence, appellant would require title insurance coverage.[1]

---

[1] The offer and acceptance does not designate a definite date for finalizing the transaction. A stipulation in the offer and acceptance that refers to closing simply provides: "Interest will commence on the day of closing or on January 15, 1973, whichever is first, i.e. on unpaid balance on assumed notes."

On March 1, 1973, a title insurance commitment was issued to appellant containing approximately eighteen exceptions which included, among other things, six unsatisfied mortgages in favor of White River Production Credit Association and a requirement that patents be obtained from the United States Government.

On April 4, 1973, appellees advised appellant, by letter, that the contract was terminated and, therefore, regarded the earnest money in escrow forfeited because appellant had failed to perform the conditions contained in the offer and acceptance agreement.

On April 5, 1973, appellant informed appellees, by letter, that appellant would not assume the mortgages in favor of White County Production Credit Association, as previously requested by appellees, since the offer and acceptance did not provide for the assumption of these mortgages; that appellant stood willing and ready to proceed with finalizing the sale at such time as appellees were prepared to deliver a valid title to the property and close the sale in accordance with the terms of the agreement. In addition, appellant's letter closed by tendering the following proposal:

> . . . However, in an effort to settle this matter, and to terminate the difficulties prior to further dispute and litigation, General Mortgage offers to pay $100.00 per acre cash for the Peacock Ranch and fee simple title thereto. This offer is made solely in the nature of settlement of the disputes which have arisen and is not in any manner whatsoever to be deemed to waive the rights of General Mortgage contained in the above referenced contract, which General Mortgage stands ready to perform and insists that you perform.

On April 9, 1973, appellant again informed appellees, by letter, it desired to finalize the transaction providing title to the property had been cleared and the terms of the agreement are followed. Appellant also advised appellees that appellant had advised the escrow agent to retain the earnest money since appellant was of the opinion that appellees had breached the agreement while appellant had not.

On April 13, 1973, appellees advised appellant:

. . .

In reference to your letter of April 5, 1973, concerning your counter offer of $100.00 cash per acre or approximately total cash offer of $380,000.00, we will not accept this counter offer as it is totally unacceptable and we are still considering General Mortgage bound to the original contract and expect them to complete said contract or consider themselves in breach thereof. I am sure you are aware that we have done everything possible in order to close this sale and if General Mortgage is standing ready to perform, then I suggest this be done immediately and that they pay on the contract as originally agreed.

On April 18, 1973, appellant informed appellees by letter:

. . . If it will be of assistance, I will gladly forward a Xerox copy of the title report supplied by American Title Insurance Company through Standard Abstract and Title Company, Little Rock, Arkansas. On second thought, please find same enclosed, which indicates that title to this property is by no means in the condition your letter indicates.

. . . In addition, we reiterate that General Mortgage Corporation is prepared to consummate this transaction at a time when the Peacocks are prepared to close upon the terms and conditions expressed in the contract. If you will notify me in writing that General Mortgage is no longer expected to assume the indebtedness at Production Credit and that all of the objections set out in this title report and exceptions thereto, will be eliminated and removed at closing, we will proceed to arrange for a closing time.[2]

---

[2] Appellant at no time supplied appellees with a copy of a title opinion regarding the condition of the land as determined by appellant's attorney from an examination of the abstracts supplied by appellees. As previously indicated, the title insurance commitment containing the exceptions was issued to appellant on March 1, 1973.

On April 2, 1973, appellees entered into an agreement with Franklin Collier to sell the lands for $510,000.00 and the sale was finalized on May 14, 1973.

On April 30, 1973, Franklin Collier entered into an agreement with Irving H. Brauer to sell the lands for $725,000.00 and this transaction was closed on May 22, 1973.

Appellant instituted its action on September 14, 1974, seeking damages for $168,000.00 for breach of the offer and acceptance agreement. Appellees filed their answer and counterclaim claiming damages against appellant for breach of contract.

In 91 C.J.S., Vendors & Purchasers, § 124, at page 1052, it is provided:

If one party fails to perform or tender performance within a reasonable time, and the other fails within a reasonable time to default the first party by tendering his own performance, rescission of the contract by mutual consent may be presumed.

The Arkansas Supreme Court in *Hicks* v. *Woodruff*, 238 Ark. 481, 382 S.W. 2d 586 (1964), emphasized that a contract may be rescinded by conduct which indicates intention to abandon contractual rights. The Supreme Court in articulating this view adopted the following comment from Restatement, Contracts, § 406, comment b (1932):

'b. The agreement to rescind need not be expressed in words. Mutual assent to abandon a contract, like mutual assent to form one, may be manifested in other ways than by words. Therefore, if either party even wrongfully expresses a wish or intention to abandon performance of the contract, and the other party fails to object, there may be sometimes circumstances justifying the inference that he assents. If so there is rescission by mutual assent; but mere failure to object to repudiation is not a manifestation of assent to a rescission. Sometimes even circumstances of a negative

1068

character, such as the failure by both sides to take any steps looking towards the enforcement or performance of a contract, may amount to a manifestation of mutual assent to rescind it.' [3]

We are of the opinion that paragraph 13 of the offer and acceptance agreement between the parties is the pivotal point in resolving this controversy. Paragraph 13 provides:

Payment of principal and interest due Northwestern Mut. Ins. Co. on Jan. 1, 1973, will be paid by buyer. Said interest to be applied against unpaid balance of principal owed to sellers.

We are persuaded that General Mortgage Corporation breached the agreement by not paying Northwestern Mutual, or tending to the escrow agent, $22,500.00 on January 1, 1973, as it had agreed. Appellant was fully aware of its obligation to pay Northwestern Mutual for appellant advised appellees on January 10, 1973, ''We need your directions as to where and to whom General Mortgage should direct payment due pursuant to terms of the Earnest Money Contract''. Furthermore, appellant stated '' General Mortgage is prepare to forward the pre-closing payment as provided in the contract, upon receipt of your directions.'' Appellees immediately forwarded to General Mortgage Corporation the name, address and the amount due, but appellant failed to make this payment. Northwestern Mutual held a first mortgage on the property involved and while the payment due in January, 1973, was only $33,500.00, the total indebtedness owed Northwestern Mutual was $188,000.00; therefore, it is plain that the failure of appellant to perform, as it had agreed, involved a matter which was vital to the existence of the agreement between appellant and appellees.

On the other hand, appellees, while recognizing that appellant had agreed to pay the annual installment due Northwestern Mutual acquiesced in appellant's conduct. The conduct of both appellant and appellees clearly evidences a rescission of the agreement.

[3]Our Supreme Court in *Wallace* v. *Johnson*, 217 Ark. 878, 243 S.W. 2d 49 (1950), recognized that the terms abandonment and rescission are words quite often used indiscriminately.

Whether the conduct of a vendor and purchaser amounts to an abandonment of a land contract is ordinarily a question of fact; however, it may become a matter of law where the acts and conduct are clear and unambiguous as in the instant case. *Wallace* v. *Johnson*, 217 Ark. 878, 234 S.W. 2d 49 (1950); 77 Am. Jur. 2d, Vendor and Purchaser, § 543, at page 671; 91 C.J.S., Vendor and Purchaser, § 121.

While the record reflects that the parties continued to communicate with each other after appellant defaulted in paying Northwestern Mutual, appellant, upon learning that appellees were negotiating an agreement to sell the lands to a third party, offered appellees $100.00 per acre cash for the property which was rejected. We do not perceive a waiver by appellees by advising appellant that if appellant proceeded immediately to comply with the original terms of the agreement, appellees were willing, after all, to sell the property to appellant. The fact remains that appellant took no steps to pay Northwestern Mutual or make a tender; appellant was not in possession of the property and knew that appellees were negotiating a sale with Franklin Collier.[4]

In *Hargis* v. *Edrington*, 113 Ark. 433, 168 S.W. 1095 (1914), our Supreme Court stated that a vendee has a duty to assert promptly his intention to perform his contract of purchase when he is aware that the vendor is treating the agreement as having been rescinded.

Although the trial court did not articulate any findings, it is plain that the trial judge recognized that the parties had abandoned the contract or there was evidence of mutual breaches and concluded that the parties should be restored to the status quo. We are persuaded that the action of the trial court is supported by substantial evidence.

Affirmed.

WRIGHT, C.J., and HAYS, J., dissent.

---

[4] Appellant was also aware that Franklin Collier sold the property to Irving H. Brauer for $725,000.00 on May 22, 1973.

M. STEELE HAYS, Judge, dissenting. I am unable to comprehend how the majority could arrive at the conclusion that there is substantial evidence that the offer and acceptance agreement was rescinded by mutual consent. Neither party urges this point on appeal, and nothing in the language of the trial court provides a foundation for such a contention.

Each side argues strenuously the opposing party breached the contract and the trial court's finding that neither side met the burden of proof as to damages cannot be reconciled with the evidence.

The real issue is, as I see it, which party failed to meet the obligations of the offer and acceptance agreement. A careful reading of this record leads me to the conclusion that it was the Sellers who breached the contract by failing to provide evidence of merchantable title as required by the agreement.

The appellant offered substantial evidence as to damages, and the appellees offered rebuttal evidence on damages. The court should have made a finding based on the preponderance of the evidence as to the party responsible for breach of the contract and the amount of damages, if any, sustained by reason of the breach.

I concede the Buyers equivocated on the January 1 payment to Northwestern Mutual Life Insurance Company, but this was not fatal to the agreement. If it was fatal breach, when did it become so, on January 2, or February 1, or March 1? Time was not of the essence and as I read the provision, it was simply that Buyers were responsible for that payment in connection with the closing together with any interest accruing by reason of late payment. It is clear the parties contemplated closing by the end of the year when they executed the offer and acceptance agreement on November 24. However, the abstracts which Sellers contracted to furnish were not delivered to the Buyers until January 10 and Buyers had a reasonable time from that point to examine the abstracts. To hold the Buyers breached this provision by failing to pay the January 1 payment when they did not even receive the abstracts until January 10 is going further than I am able to go in upholding the trial court. Moreover, how

could it be said the Buyers should have risked payment of $22,500.00 in the face of abstracts containing as many clouds and encumbrances as were admittedly present here? In short, I interpret this provision as contemplating the Buyers would make the payment as soon as the transaction was closed.

If Sellers had moved with greater punctuality or had shown greater interest in moving to a closing, this January 1 mortgage payment would not have been a stumbling block as Sellers later contended. Sellers never made categorical demand that the payment be made. Sellers say they considered Buyers to have forfeited by the latter part of January because of the non-payment, but their actions belie that attitude. In February they accepted the return of the abstracts for the issuance of title insurance, and after March 1, they forwarded to Sellers a title commitment reflecting numerous encumbrances on the title and no evidence of patents for some of the lands. Even Seller's letter of April 4, raising the suggestion of a breach by the Buyers (written after Sellers had contracted with another buyer), makes no mention of the alleged breach by failure to pay the January 1 payment. Moreover, when Sellers wrote Buyers on April 13, well after Sellers had contracted to sell to Collier, Sellers wrote the Buyers as though the contract was still in effect saying: "and we are still considering General Mortgage bound to the original contract and expect them to complete said contract . . ."

The real stumbling block in this transaction, as I see it, was Seller's failure to provide evidence of certain patents and to remove numerous encumbrances in favor of White River Production Credit Association. It is undisputed these encumbrances were outstanding and totaled in excess of $400,000.00, but Seller's only explanation for their failure to remove or to satisfy them was that, "we also agreed at the same time that PCA would either be assumed (by the Buyers) or be paid off but that wasn't part of the written contract." However, they were not included in the agreement and Buyers had every right to stand upon the agreement as signed.

I would reverse the case and remand to the trial court for

a new trial. *De Vagier* v. *Whit Davis Lumber Company*, 257 Ark. 371; *Hinton* v. *Bryant*, 232 Ark. 688.

I am authorized to say that WRIGHT, C.J., concurs in this dissent.